NICHOLAS KAMBYLIS, Plaintiff-Appellant, v. FORD MOTOR COMPANY, Defendant-Appellee.

First District (1st Division)    No. 1—02—0655

Opinion filed March 24, 2003.

Louis A. Pavilos, of Chicago, for appellant.

Donohue, Brown, Mathewson & Smyth, of Chicago (Karen Kies DeGrand, Anthony M. Pinto, and Kristin M. Gruss, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Nicholas Kambylis, filed a complaint against defendant, Ford Motor Company, asserting a claim on a products liability theory for injuries he sustained in a car accident when he hit another vehicle from the rear while driving a 1995 Ford Escort (Escort). Plaintiff asserted that the vehicle was defective because the air bag failed to deploy upon impact, thus enhancing his injuries. After the accident, the Escort was towed and was eventually destroyed by the City of Chicago's automotive pound. As a result, defendant filed a motion to

bar evidence as a discovery sanction, alleging that plaintiff spoiled crucial evidence by failing to preserve the Escort. Defendant likewise moved for summary judgment. The trial court granted defendant's motions. Plaintiff now asserts that the trial court erred in granting defendant's motion to bar evidence as a discovery sanction because plaintiff answered interrogatories and requests to produce, gave a deposition at defendant's request, did not violate any court orders, did not intentionally allow the Escort to be destroyed and otherwise cooperated in the discovery process. Plaintiff likewise contends that the grant of summary judgment in defendant's favor was improper because plaintiff provided adequate circumstantial and expert opinion evidence demonstrating that the Escort was defective. For the reasons that follow, we affirm.

## BACKGROUND

For purposes of this appeal, it is undisputed that plaintiff was driving his parents' Escort on Pulaski Street near the intersection with Marquette Street in Chicago at approximately 7:50 a.m. on July 9, 2000, when he had a "momentary lapse" and rear-ended the vehicle in front of him. As a result of the accident, plaintiff sustained numerous injuries to his face and underwent several surgeries. The Escort was towed by the City of Chicago (the City) immediately following the accident to an automotive pound located at 10301 South Doty Avenue in Chicago.

On December 11, 2000, plaintiff filed a two-count complaint against defendant. Count I of the complaint sought compensatory damages under a products liability theory, claiming that the Escort was "defective and unreasonably dangerous for its foreseeable intended use." Count II of the complaint sought punitive damages on the basis that defendant "showed an utter indifference to and conscious disregard for the safety of the occupants of the [Escort] *** [and] *** knew or recklessly failed to discover that the [Escort] was defective and unreasonably dangerous." Count II was eventually stricken without prejudice because plaintiff failed to obtain leave of court to seek punitive damages as required under section 2—604.1 of the Code of Civil Procedure. 735 ILCS 5/2—604.1 (West 2000).

On July 12, 2000, the City sent a "Notice of Vehicle Impoundment" to Toula Kambylis,[1] plaintiff's mother. The notice advised that the Escort was in the automotive pound located at 10301 South Doty Avenue in Chicago, and that anyone, aside from the owner, seeking its release from the pound would be required to "furnish the written and

---

[1]The letter incorrectly spelled plaintiff's last name as "Kabilis."

notarized approval of the registered owner." The notice further warned:

"Should you fail to retrieve your vehicle or request a hearing within the 15[-]day period [previously defined as 15 days from the date of the notice], your inaction will constitute a waiver of your rights therein, and this vehicle and its contents, if any, will be disposed of according to the provisions of the Illinois Motor Vehicle Code."

On July 26, 2000, one day before the above-referenced notice indicated that the Escort was to be destroyed, plaintiff's father traveled to the automotive pound and photographed the Escort, but did not seek its release from the pound. Plaintiff contends that, on that same date, his counsel addressed the following letter to defendant:

"We represent Nicholas Kambylis who was involved in an accident on July 9, 2000, while driving a 1995 Ford Escort. We contend that his air bags did not properly function. His vehicle was towed by the City of Chicago, Automotive Pound, 10301 S. Doty Ave., Chicago, IL (312) 746-4954, # S/R 00-00874522, SST:0000146838. Your company needs to act quickly to preserve the vehicle. We have taken photographs."

Defendant maintains that it never received this letter, and the record reveals that the letter or a copy thereof was not included in the discovery materials or submitted to defendant despite defendant's request pursuant to Supreme Court Rule 214 (166 Ill. 2d R. 214) that plaintiff produce all communication which, he contended, constituted notice regarding the impending destruction of the Escort. The record further reflects that plaintiff did not produce the letter until defendant filed its motion seeking to bar evidence as a sanction for plaintiff's failure to produce the Escort.

In support of his contention that the July 26 letter was, in fact, sent as he alleged, plaintiff calls our attention to a letter addressed to plaintiff's attorney from defendant dated September 6, 2000, stating that defendant "acknowledges" plaintiff's "recent contact to Ford Motor Company." However, there is no indication on the face of the letter that the "recent contact" defendant's letter makes reference to is the July 26 letter allegedly written by plaintiff. Conversely, in support of its contention that plaintiff never sent the July 26 letter, defendant produced a letter sent by plaintiff on October 13, 2000, indicating that the Escort was "in a police pound on the south side of Chicago *** [at] 10430 Oda St., Chicago, IL." Defendant also produced a letter dated May 8, 2001, which stated that the Escort was taken to "101st and Oda, Chicago, Illinois" and that plaintiff had "secured a release of the vehicle and he [sic] [the vehicle is] still in the possession of the Chicago Authorities." Both of these letters contradict the representation made

by plaintiff in the July 26 letter and inferentially would negate any previous letter dealing with the same subject. Although the automotive pound indicated in the notice sent to plaintiff that the Escort would be destroyed on July 27, 2000, the record indicates that the Escort was not removed from the Doty Street automotive pound until August 11, 2000, and was thereafter destroyed.

Defendant contends on appeal that it learned that the Escort had been destroyed through its own efforts and, upon receiving that information, filed its "Motion to Bar Evidence and for Summary Judgment" on the basis of "plaintiff's spoilation [sic] of evidence in failing to either preserve the vehicle or notify Ford of its availability and his claim." In the motion, defendant contended that plaintiff had a duty to preserve the Escort and that his breach of that duty resulted in defendant being significantly prejudiced and ultimately foreclosed from defending against plaintiff's claims. Defendant urged the court to bar plaintiff's evidence as a sanction and grant summary judgment.

Plaintiff filed a response asserting that no sanction for spoliation of evidence was warranted because he notified defendant that the vehicle was impounded through his July 26, 2000, letter and thus satisfied his duty of preservation. Plaintiff further asserted that he did not "do anything deliberately or negligently to destroy evidence" and that he cooperated "in good faith in discovery." In addition, plaintiff argued that even though the car was destroyed, there was sufficient secondary evidence to preclude the motion for summary judgment. Attached to plaintiff's response was a report dated February 1, 2002, submitted to plaintiff's counsel in the form of a letter from Dr. Daubert, who represented himself as an employee of a forensic engineering firm. In the portion of the report included in the record on appeal, Dr. Daubert opined that the car was defective because the air bag failed to deploy. Dr. Daubert stated that plaintiff was involved in "a full frontal contact. *** Therefore, the type of collision is met [sic] for air bag deployment. The severity of the collision is also of sufficient magnitude that the air bag should have deployed." Plaintiff represents in his brief that the report also indicated that "[t]he non-deployment of the air bag is consistent with other complaints received for the same model year." This latter sentence, however, is not included in the portion of the record received by this court, which is noticeably incomplete.

Despite Dr. Daubert's report, and the other contentions advanced by plaintiff in his response, defendant's motion to bar evidence and motion for summary judgment were granted. This appeal followed.

## ANALYSIS

### Discovery Sanction

On appeal, plaintiff first contends that the trial court erred in bar-

ring his evidence as a discovery sanction because: (1) his failure to preserve the vehicle did not violate any court orders; (2) defendant was informed of the whereabouts of the vehicle and was "put on notice to act quickly to preserve the subject vehicle"; (3) he took no affirmative action to destroy the vehicle or any other evidence; and (4) he photographed the vehicle before it was destroyed. In response, defendant asserts that the trial court properly granted its motions because plaintiff had a duty to preserve the Escort or to notify defendant of the claims against it, and plaintiff breached those duties when he allowed the car to be destroyed with knowledge of its impending destruction. We agree.

■ It is well settled that, while there is generally no duty to preserve evidence, such a duty may arise through an agreement, contract, statute or any other special circumstance or voluntary assumption of a duty by affirmative conduct. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 195, 652 N.E.2d 267, 270-71 (1995). In any of these circumstances, a duty of due care to preserve evidence exists "if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 271. With respect to causes of action sounding in strict liability, such as the case at bar, Illinois courts have long held that "[t]he preservation of an allegedly defective product is of the utmost importance in both proving and defending against a strict liability action." *Graves v. Daley*, 172 Ill. App. 3d 35, 38, 526 N.E.2d 679, 681 (1988). This is because the allegedly defective product, maintained in the condition it was in at the time of the occurrence, often aids in determining whether the product is defective and how the defect occurred, "and is usually far more instructive to a factfinder than photographs or oral descriptions." *Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.*, 262 Ill. App. 3d 636, 642, 634 N.E.2d 1319, 1323 (1994). Failure to preserve evidence will support sanctions, including debarment of evidence. See *American Family Insurance Co. v. Village Pontiac-GMC, Inc.*, 223 Ill. App. 3d 624, 626, 585 N.E.2d 1115, 1117-18 (1992). The decision to impose sanctions is largely within the discretion of the trial court, and the trial court's decision will not be disturbed on review absent an abuse of discretion. *Shelbyville*, 262 Ill. App. 3d at 641, 585 N.E.2d at 1323.

In this case, plaintiff first asserts that he did not have a duty to preserve the vehicle because he was not ordered to do so by the court. This argument, however, was previously considered and rejected by this court in *Graves v. Daley*. There, the plaintiffs filed suit alleging that a fire in their home was caused by a defective furnace in their basement, sold and installed by the defendant. After the fire, the

plaintiffs' insurance carrier inspected the home and concluded that the furnace was the probable cause of the fire. The plaintiffs then disposed of the furnace, prior to filing suit, with the permission of their insurance carrier. The defendant moved to bar the plaintiffs from presenting any evidence regarding the condition of the furnace after learning that the furnace was unavailable for inspection and the motion was granted by the trial court. *Graves*, 172 Ill. App. 3d at 36-37, 526 N.E.2d at 680.

■ On appeal, the plaintiffs alleged that the trial court's sanction was unwarranted because they did not violate any court orders when destroying the furnace. We rejected their contention, reasoning that "[t]he plaintiffs are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence. Further, the furnace was destroyed by the plaintiffs after their expert had examined it and before the suit was filed, thus, the court could not have issued a preservation order." *Graves*, 172 Ill. App. 3d at 38, 526 N.E.2d at 681. We likewise concluded that the plaintiffs had a duty to preserve the furnace because they "knew, or should have known, that a defective condition of the furnace, the item they allege caused the fire, was a crucial piece of evidence and should have been preserved." *Graves*, 172 Ill. App. 3d at 39, 526 N.E.2d at 682; accord *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); see also *American Family*, 223 Ill. App. 3d at 626, 585 N.E.2d at 1118 ("it is similarly sound that sanctions may also be imposed despite the absence of a court order barring destruction"), citing R. Johnston & K. Kandaras, Discovery in Illinois 181 (1985). We also noted that the destruction of the furnace could not be excused because it was not "innocently or negligently destroyed." *Graves*, 172 Ill. App. 3d at 39, 526 N.E.2d at 681.

■ In this case, like *Graves*, the facts support a conclusion that plaintiff had a duty to preserve the Escort because he knew or should have known that the defective condition of the Escort was a crucial part of the investigation, with or without a court order mandating preservation. There can be little question that plaintiff and his family recognized that the preservation of the Escort was of crucial relevance to the case they intended to file against defendant because plaintiff's father went to the automotive pound to photograph the Escort prior to its destruction.

The facts also show, as they did in *Graves*, that the destruction of the evidence cannot be attributed to the commission of an innocent

mistake resulting in the Escort's destruction. The parties do not dispute that plaintiff's parents received a notice at their correct address from the automotive pound advising them that the Escort was going to be destroyed by the City if it was not claimed by a date certain. Despite this notice, plaintiff failed to act to protect the car. As already noted, plaintiff argues that defendant should bear responsibility for the car's destruction because it, too, was given notice, through a letter from plaintiff, that the car was going to be destroyed. While we will deal with this issue more thoroughly later, we note here, as we did previously, that there is a dispute as to whether defendant actually received the letter plaintiff speaks of. Moreover, plaintiff cites no authority and we find none which suggests that plaintiff's duty to preserve is satisfied by merely advising defendant to protect the car, especially where, as here, plaintiff had control of the car and defendant could not remove it from the automotive pound without plaintiff's express consent in the form of "written and notorized approval." It stands to reason that such control need not entail actual custody of the evidence if, in fact, such evidence is in the hands of a bailee subject to instruction from the bailor.

Thus, even though plaintiff was not ordered by the court to preserve the Escort, the lack of a court order does not give a plaintiff the right to stand by idly while evidence crucial to the resolution of a case is destroyed, especially where, as here, plaintiff knew where the evidence was and had the authority to prevent its destruction and where the destruction of the evidence greatly prejudiced the defendant such that it prohibited it from effectively defending against plaintiff's claims. Further, as we concluded in *Graves*, plaintiff's argument that he did not have a duty to preserve the evidence based on the absence of a court order is particularly unpersuasive where the evidence demonstrates that a court order could not have been issued because plaintiff had not filed suit at the time the car was destroyed.

■ Plaintiff next asserts that the trial court erred in barring evidence of the vehicle as a discovery sanction because plaintiff took no affirmative action to destroy the vehicle and otherwise cooperated with the discovery process. This claim, as the proceeding one, also lacks merit. As previously articulated, the duty to preserve evidence exists where a reasonable person in the plaintiff's position knew or should have known that the evidence was material to a potential civil action. See *Boyd*, 166 Ill. 2d at 195, 652 N.E.2d at 271. While plaintiff apparently argues that he cannot be held responsible for breaching his duty to preserve evidence when he personally did not destroy the evidence, we see no caveat in the preservation rule for plaintiffs who knew or should have known that the evidence should have been

preserved, neglected to preserve it, but did not happen to personally destroy it. We find no case law to support such an interpretation, which would excuse passive spoliation, *i.e.*, spoliation through inaction. In fact, while not addressing this issue directly, Illinois cases clearly point to the opposite conclusion. See *Shelbyville*, 262 Ill. App. 3d at 643, 634 N.E.2d at 1324 (where the plaintiffs were barred from presenting evidence of defective grill after the plaintiffs' insurance company misplaced portions of the grill); *American Family*, 223 Ill. App. 3d at 627-28, 585 N.E.2d at 1118-19 (where the plaintiffs were barred from presenting evidence of defect in car after plaintiffs turned over title of the car to their insurance company and insurance company arranged to have the car destroyed).

Plaintiff attempts to support his contention that spoliation resulting from inaction would not warrant a sanction by relying on the case of *Peterson v. Ress Enterprises, Inc.*, 292 Ill. App. 3d 566, 686 N.E.2d 631 (1997). However, we find *Peterson* to be inapposite and, if anything, to negate plaintiff's contention. In *Peterson*, the plaintiff, an Illinois resident, was in an auto accident in Arkansas and filed suit alleging that the accident resulted from a defective tire. The car and tire were transported to a police-accredited car pound in Arkansas and the allegedly defective tire was stolen or misplaced from the pound prior to trial. The defendant alleged on appeal that plaintiff should have been sanctioned for spoliation of evidence because he breached his duty to preserve the defective tire. We concluded that sanctions were inappropriate because the plaintiff diligently tried to preserve the tire, the tire was not lost as a result of the plaintiff's unreasonable failure to take affirmative action to preserve it, and the plaintiff had no reason to presume that the evidence would be destroyed. See *Peterson*, 292 Ill. App. 3d at 580, 686 N.E.2d at 641. In this case, however, we cannot say that plaintiff made a "diligent" attempt to preserve the Escort or that the Escort was destroyed through no fault of plaintiff. On the contrary, plaintiff was notified by letter that the Escort faced destruction and made no effort to preserve the vehicle, even though the vehicle was in the nearby vicinity and plaintiff possessed the authority to preserve it. Accordingly, we conclude that plaintiff breached his duty to preserve the Escort and that his duty was not negated by the fact that the Escort was destroyed by someone other than plaintiff.

■ Plaintiff next asserts that he should not have been sanctioned for failure to preserve the Escort because he notified defendant of the Escort's impending destruction and defendant failed to take action to inspect or preserve the vehicle. Citing to the Fourth Circuit's decision in *Silvestri*, plaintiff concedes that he did, in fact, have a duty to notify defendant that the Escort was going to be destroyed. In *Silves-*

*tri*, the court stated that "[i]f a party cannot fulfill this duty to preserve [evidence] because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Silvestri*, 271 F.3d at 591. Recognizing this duty, plaintiff maintains that his July 26, 2000, letter to defendant served as notice of the Escort's pending destruction, and therefore, sanctions against him were inappropriate because he complied with the duty to notify.

First, we note that *Silvestri* does not exonerate a party who actually controls the evidence from a duty to preserve by merely passing notice on to the defendant, but only addresses the duty with respect to someone who does not own or control the evidence. More overriding, as we previously noted, a question exists as to whether the July 26, 2000, letter, which plaintiff asserts was sufficient notice to defendant, was ever sent by plaintiff. Defendant asserts in its brief that it never received the July 26, 2000, letter, and the record demonstrates that the letter was not made part of plaintiff's discovery materials until after defendant filed its motion to bar evidence of the Escort. Moreover, the record demonstrates that plaintiff sent at least two letters to defendant after July 26, 2000, which represented that the Escort had not been destroyed and was still at the automotive pound. Notably, those letters, dated October 13, 2000, and May 8, 2001, indicated that the Escort was at a pound located at 10430 Oda Street and 101st and Oda, respectively. However, the facts show that the car was held at the automotive pound located at 10301 South Doty Avenue, and there is no evidence in the record that the car was removed from that pound until August 14, 2000, when it was taken to be destroyed. For these reasons, as well as those set forth above, we conclude that the trial court did not err in barring evidence of the Escort as a discovery sanction for plaintiff's spoliation of evidence.

Plaintiff nevertheless contends that the trial court erred in barring evidence of the Escort because he arranged to have his father photograph the car prior to its destruction. This argument has also been previously considered and rejected by this court. In *American Family*, the plaintiffs' home was severely damaged by a fire that was caused by the plaintiffs' car. An investigator for the plaintiffs' homeowner's insurance carrier photographed the car and removed a wire that he believed caused the fire. The plaintiffs then transferred title of the car to their automotive insurer and the car was destroyed several months later. The plaintiffs subsequently filed suit against the defendant, and the defendant responded with a motion to bar evidence based on the destruction of the car, which was granted by the trial

court. On appeal, the plaintiffs argued that their evidence should not have been barred because photographs and two wires from the car had not been destroyed. *American Family*, 223 Ill. App. 3d at 625-26, 585 N.E.2d at 1117.

We concluded that the plaintiffs' argument was "without merit" because, although the photographs and the wires were available, "defendants were unable to inspect, as plaintiffs' experts were, the most important evidence," namely, the car itself. *American Family*, 223 Ill. App. 3d at 627, 585 N.E.2d at 1118. We concluded that the physical evidence destroyed with the vehicle would have been "far more probative" in determining the cause of the fire than the photographs and wire, and that the "physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photograph descriptions." *American Family*, 223 Ill. App. 3d at 627, 585 N.E.2d at 1118. We see no reason to depart from this reasoning here. In this case, plaintiff failed to retrieve the Escort from the automotive pound even though he was advised that the car would be destroyed if not claimed. Plaintiff allowed this destruction to occur even though he knew, or should have known, that defendant would want to inspect the vehicle and that experts on both his and defendant's behalf would need to inspect the vehicle in order to determine whether the air bag was actually defective. As we stated in *American Family*, the defective product in the condition after an accident is far more instructive and probative than photographs, especially where, as here, the photographs were taken by a nonexpert who presumably could not be certain about what items in the car would aid an expert in determining whether a defect existed.

■ Finally, plaintiff contends that the trial court erred in granting defendant's motion for summary judgment. In support of this assertion, plaintiff argues that he can establish a *prima facie* case of product liability based on the inference of a defect established through the report of Dr. Daubert, his expert, and other circumstantial evidence such as the photographs taken prior to the destruction of the Escort. Defendant counters that the report of plaintiff's expert is not properly before this court and should not be a part of our consideration on appeal because the report is unsworn and was not made under oath as an affidavit, and therefore, is in violation of Supreme Court Rule 191. 145 Ill. 2d R. 191. While we agree with defendant that Dr. Daubert's report is not submitted as an affidavit signed and sworn under oath, we note that there is no evidence in the record demonstrating that defendant objected to the admission of Dr. Daubert's report in the trial court. It is well settled that the failure to object at trial results in

waiver of an issue on appeal. See *Regency Savings Bank v. Chavis*, 333 Ill. App. 3d 865, 869, 776 N.E.2d 876, 880 (2002). Accordingly, we conclude that defendant's claims with respect to Dr. Daubert's report are barred from further review by the waiver doctrine.

Regardless of the admissibility of Dr. Daubert's report on appeal, the fact remains that plaintiff's argument with respect to summary judgment would only have a chance of prevailing if the sanction in this case was improper. However, having concluded that the sanction was appropriate, we find that plaintiff's claim lacks merit. We find support for this conclusion in *American Family*, a case previously discussed herein. In *American Family*, as in the case at bar, this court concluded that the trial court properly barred the plaintiffs from presenting evidence regarding their allegedly defective vehicle after plaintiffs allowed the vehicle to be destroyed prior to trial and before the defendant had an opportunity to inspect or examine it. *American Family*, 223 Ill. App. 3d at 627-28, 585 N.E.2d at 1118. The plaintiffs there, as here, nevertheless argued that summary judgment was improper because they could still make out a *prima facie* case of product liability based on the inference of a defect. The *American Family* court held that the plaintiffs' assertion lacked merit because:

"Any cause of action for product liability based on an inference must still show that the damage resulted from a condition of the product. After all evidence of the condition of the car is barred, no evidence remains upon which the trial court could find product liability or negligence. Therefore, the trial court did not err in granting defendants' motion for summary judgment." *American Family*, 223 Ill. App. 3d at 629, 585 N.E.2d at 1120.

We agree. In this case, the trial court barred plaintiff's evidence concerning the Escort, and therefore, the photographs, along with Dr. Daubert's report, were likewise inadmissible. Without any evidence regarding the alleged defect in the car, plaintiff was unable to present a factual basis to the court that would entitle him to judgment. Accordingly, we conclude that summary judgment was proper in this case.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.