No. 2--02--0201 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

JAMES ANDERSEN, as Independent ) Appeal from the Circuit Court

Adm'r of the Estate of ) of Lake County.

Daniel Andersen, Deceased, ) 

) 

Plaintiff, )

) 

v. ) No. 00--L--639

) 

MACK TRUCKS, INC., ) 

) 

Defendant ) 

)

(Galbreath, Inc., Defendant and )

Third-Party Plaintiff-Appellant; )

BFI Waste Systems of North )

America, Inc., Third-Party ) 

Defendant-Appellee; Dana ) Honorable

Corporation, Third-Party  ) Henry C. Tonigan, III,

Defendant). ) Judge, Presiding.

_________________________________________________________________

JUSTICE GROMETER delivered the opinion of the court:  

Plaintiff, James Andersen, filed a wrongful death, product liability, negligence, and survival action in connection with the death of his father, Daniel Andersen (Daniel), who was killed in a work-related accident.  The complaint named Galbreath, Inc. (Galbreath), and Mack Trucks, Inc. (Mack), as defendants.  This appeal arises from the dismissal, with prejudice, pursuant to
 
Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)),
 
of Galbreath's second-amended third-party complaint for negligent spoliation of evidence against Daniel’s employer, BFI Waste Systems of North America, Inc. (BFI).  W
e affirm the portion of the order dismissing Galbreath's complaint.
 
We reverse insofar as the dismissal
 
is
 
with prejudice
 
and 
remand for further proceedings.

The original complaint alleged that Daniel 
was killed on February 14, 2000, when a hydraulic hose in the hoist mechanism of the truck he was operating for BFI ruptured, causing the mechanism to fail and the load to lower onto him.  Mack manufactured the truck involved, and Galbreath manufactured the hoist mechanism.  Galbreath filed a third-party complaint against BFI for contribution, on the basis that BFI had been negligent in its repair and maintenance of the equipment and in 
the
 
training of its employees. 

The court dismissed Galbreath's contribution complaint in accordance with the rule in 
Kotecki v. Cyclops Welding Corp.
, 146 Ill. 2d 155 (1991), when BFI agreed to release its workers' compensation lien.  Galbreath then filed its first-amended complaint, which alleged that BFI's negligent loss of the truck and related equipment had impaired its ability to defend itself in the underlying suit.  The court dismissed this complaint and Galbreath filed its second-amended complaint, which alleged essentially
 
as follows.

The Waukegan police, the Occupational Safety and Health Administration (OSHA), and an engineering consulting firm, Triodyne Engineering, each investigated the accident that killed Daniel. 

Three days after the accident, on February 17, 2000, BFI's Waukegan district manager wrote to Galbreath informing it of the fatality and requesting that a service representative inspect the equipment.  The letter also informed Galbreath that BFI intended to place the equipment back in service on March 1, 2000.

On February 21, 2000, Galbreath's engineering manager made a "brief visual inspection" of the equipment at BFI's Waukegan facility.  BFI had secured the truck and segregated it from 
other BFI trucks and equipment.

Some time "shortly after" the inspection, Galbreath sent the Waukegan district manager a letter requesting that he
 turn over
 
evidence relating to
 Daniel’s
 
death, including the ruptured hose.  
Galbreath
 
asked that the hose be preserved if it could not be 
 turned over.
 
 
We note that the
 
letter is undated, and the date on which it was sent cannot be determined from the record.

On April 1, 2000, BFI sold the equipment to Onyx Waste Services, Inc. (Onyx).  (Although it is not specifically alleged by Galbreath, we note that the record reflects that the equipment was sold as part of the sale of BFI's entire Waukegan operation to Onyx.)

 BFI did not inform Galbreath of the sale of the equipment at the time the third-party complaint was filed and did not comply with discovery demands for the equipment.  BFI first informed 
 Galbreath
 
of the sale of the equipment in a letter dated May 2, 2001.  

Galbreath ultimately succeeded in locating the truck at the Onyx facilities, but the hoist and the hose were not recovered.

OSHA's report on the accident suggests that BFI had modified the truck, hoist, and hose. 

Finally, Galbreath alleged that, had the equipment been preserved, it would have established the "lack of defect attributable to Galbreath and/or the merit of one or more affirmative defenses based upon third-party modification or other intervening causes. *** Absent that evidence, Galbreath may not be able to prove these defenses, and its ability to defend itself in the [u]nderlying [l]itigation has been impaired."

BFI moved to dismiss this complaint under section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 2000)).  This motion was granted with prejudice.  The order stated that the complaint had failed to allege a duty owed by BFI to Galbreath, the breach of such a duty, and the breach's proximate cause of damages to Galbreath.  The trial court found no just reason to delay appeal of the dismissal order, and this appeal followed.

A motion to dismiss a complaint under section 2--615 should be granted only when the allegations in the complaint, construed in the light most favorable to the plaintiff, fail to state a cause of action upon which relief can be granted.  
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 147 (2002).  All well-pleaded facts and inferences drawn from those facts are accepted as true.  
Oliveira
, 201 Ill. 2d at 147.  We review a dismissal under section 2--615 
de
 
novo
.  
Oliveira
, 201 Ill. 2d at 147-48. 

The Illinois Supreme Court set forth the elements needed for a spoliation of evidence claim in 
Boyd v. Travelers Insurance Co.
, 166 Ill. 2d 188 (1995).  Spoliation of evidence is not an independent basis for a tort claim, but relief is available if a claim can be stated under ordinary negligence law.  
Boyd
, 166 Ill. 2d at 193.  Thus, the plaintiff in
 
a spoliation 
of evidence case
 
must plead the existence of a duty
, a breach of the duty, an injury proximately caused by the breach, 
and damages.
  
Boyd
, 166 Ill. 2d at 194-95.  

No general duty to preserve evidence exists, but a duty can arise out of an agreement or contract, a statutory requirement, or another special circumstance, such as the assumption of the duty by affirmative conduct.  
If one of these pertains, then a defendant "owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action."  
Boyd
, 166 Ill. 2d at 195.

In 
Boyd
, the plaintiff alleged that he was at work in his employer's van when a propane heater exploded, seriously injuring him.  The heater was the plaintiff's personal property.  The defendant, the plaintiff's employer's insurer, took possession of the heater, saying that it was needed to investigate the plaintiff's workers’ compensation claim. 
However, the heater
 
was lost before any testing was completed.  The defendant's employees were aware of the relevance of the heater to future litigation.  By taking control of the heater under the circumstances described, the defendant assumed a duty to preserve it.  
Boyd
, 166 Ill. 2d at 195.

Boyd
 articulates a two-prong test for the existence of a duty to preserve evidence: (1) an
 
agreement, contract, statutory requirement, or other special circumstance such as the assumption of the duty by affirmative conduct (the relationship prong), and (2) that a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action (the foreseeability prong).   
Boyd
, 166 Ill. 2d at 195. Unless both prongs are satisfied, there is no duty to preserve evidence.   
Boyd
, 166 Ill. 2d at 195.

The Illinois Supreme Court offered some insight into the circumstances that give rise to a duty to preserve evidence
 in 
Miller v. Gupta
, 174 Ill. 2d 120 (1996).
  In 
Miller
, 
the
 
court
 
 allowed
 
the plaintiff to amend the spoliation count of her complaint 
where
 
the record suggested that the evidence sought had been destroyed after 
the plaintiff’s attorney had requested it from the defendant and while it was segregated, as a result of the request, from other similar material.
  
Miller
, 174 Ill. 2d at 123-24.  
Miller
 did 
not
 hold that these facts, if properly pleaded, would give rise to a duty
 to preserve the evidence
; it 
did
 consider
 
these
 
facts 
significant in its decision to remand 
and
 
allow the plaintiff to replead her spoliation complaint.  Thus, 
Miller
 gives
 
an additional indication of the sort of special circumstances that give rise to a duty to preserve evidence.

Two Fifth District cases, cited by Galbreath in support of its complaint, seem to 
eliminate
 
the relationship prong
 from
 
Boyd
.  In 
Jones v. O'Brien Tire & Battery Service Center, Inc.
, 322 Ill. App. 3d 418 (2001), the court stated that a "plaintiff in a negligence case based upon spoliation of evidence need only allege that a reasonable person in the defendant's position should have foreseen that the evidence in question was material to a potential civil action.  There is no requirement that the plaintiff allege the existence of any 'special relationship' which would give rise to that knowledge. *** [T]he existence of a 'special relationship' ***  would help to establish *** foreseeability ***."   
Jones
, 322 Ill. App. 3d at 422-23.  

In 
Jones
, a tire
 separated from
 
a landscaper's truck and killed the 
plaintiff's decedent.  The 
plaintiff settled the resulting claim with the landscaper and then sued the service center, which was alleged to have negligently attached the tire.  
Jones
, 322 Ill. App. 3d at 419.  The service center filed a third-party complaint against the landscaper, alleging that he had negligently disposed of the tire assembly, thus impairing the tire center's ability to defend itself.   
Jones
, 322 Ill. App. 3d at 420.  The landscaper's insurer had requested that he preserve the tire assembly, but there was no allegation that the service center made such a request.   
Jones
, 322 Ill. App. 3d at 419.   The court held that foreseeability of the need for the tire assembly as evidence, coupled with ownership and possession of it after the accident, was a sufficient special circumstance to establish the landscaper's duty to preserve the tire assembly for any potential party's benefit.   See 
Jones
, 322 Ill. App. 3d at 422-23.  This analysis merges the relationship prong of 
Boyd
 into the foreseeability prong and, contrary to 
Boyd
, creates a general duty to preserve evidence.

In 
Stinnes Corp. v. Kerr-McGee Coal Corp.
, 309 Ill. App. 3d 707 (1999), the court took a similar approach.  The court quoted 
Boyd
 as saying " 'a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action.' "  
Stinnes Corp.
, 309 Ill. App. 3d at 715, quoting 
Boyd
, 166 Ill. 2d at 195.  However, the full sentence in 
Boyd
 was "
In any of the foregoing instances
, a defendant owes a duty of due care to preserve evidence if a reasonable person in the defendant's position should have foreseen that the evidence was material to a  potential civil action."  (Emphasis added.)  
Boyd
, 166 Ill. 2d at 195.  The "foregoing instances" referred to were the existence of a contract or any of the other circumstances satisfying the relationship prong.  
Boyd
, 166 Ill. 2d at 195.  Again, the Fifth District
 eliminates the relationship prong 
from 
Boyd
.

The analysis in 
Jackson v. Michael Reese Hospital & Medical Center
, 294 Ill. App. 3d 1 (1997), of a spoliation claim for loss of X rays allegedly needed to prove a malpractice claim stands in contrast to the reasoning in 
Jones
 and 
Stinnes Corp.
  
In 
Jackson
, 
the
 
spoliation count of the complaint had been dismissed for failure to state a claim upon which relief 
could
 
be granted.  
Jackson
, 294 Ill. App. 3d at 5.  The court recited both prongs of the duty standard in 
Boyd
 (
Jackson
, 294 Ill. App. 3d at 10-11) and then explained why the complaint was factually insufficient to satisfy the relationship prong (
Jackson
, 294 Ill. App. 3d at 11-13).  In 
Jackson
, the plaintiffs alleged that the hospital had voluntarily assumed a duty to preserve the X rays, but failed to specify what conduct by the hospital indicated such an undertaking.  
Jackson
, 294 Ill. App. 3d at 11.  Although the complaint was inadequate, the court permitted the plaintiffs to amend it.  The record suggested that the hospital had segregated the evidence into a special litigation file--a circumstance that might establish the voluntary assumption of a duty to preserve the evidence.  See 
Jackson
, 294 Ill. App. 3d at 11-12.  Had this set of facts been adequately pleaded, the court suggested, 
Boyd
's foreseeability prong would 
have been
 
satisfied as well.  See 
Jackson
, 294 Ill. App. 3d at 10-11.  
Jackson
 is thus an appropriate application of the full standard in 
Boyd
, but 
Jones
 and 
Stinnes Corp.
 are not.

In this case, Galbreath does not allege any contract or agreement between BFI and
 
itself, nor does it allege that BFI had any statutory or regulatory duty to
 preserve
 
the evidence.  Since BFI had informed Galbreath that the truck was to be put back into service approximately two weeks after the accident, Galbreath cannot plead that BFI voluntarily undertook to
 preserve
 
the evidence specifically regarding the truck.  Galbreath
 suggests
 
that its undated letter sent "shortly after" its inspection of the truck, requesting that BFI
 turn over
 
or preserve the hose and related evidence, constitutes a special circumstance imposing a duty to preserve evidence.
  We decline to hold that a
 
mere request that a party preserve evidence is sufficient to impose
 
a duty absent some further special relationship.
  
We 
will
 
not speculate as to what other facts Galbreath could 
plead to establish the existence of a duty.

The plaintiff in a
 
spoliation
 of evidence case
 
must also plead
 
breach of the duty to preserve evidence.  In the usual case, where the plaintiff has had no opportunity to inspect the evidence in contemplation of litigation, establishing the inadequate protection of the evidence would be sufficient to plead the breach of the duty. See, 
e.g.
, 
Jackson
, 294 Ill. App. 3d at 13.  Here, Galbreath had the opportunity to
, 
and did in fact
,
 inspect the equipment before it was lost.  Arguably, the duty could have terminated with the inspection.  The scope of the duty to preserve evidence has not been at issue in other Illinois spoliation cases, but, by natural extension of the reasoning in 
Boyd
, we conclude that the duty remains as long as the defendant should reasonably foresee that further evidence material to a potential civil action could be derived from the physical evidence in the defendant's possession
, 
e.g.
, testing, microscopic examination, chemical analysis, etc.  See 
Boyd
, 166 Ill. 2d at 193.  Galbreath has not pleaded any facts that would indicate that BFI should have known, prior to selling the equipment, that further inspection or testing of the equipment would provide additional information material to a potential civil action.  Absent this, we cannot say that any duty BFI may have owed Galbreath was not satisfied by allowing the inspection of the equipment
; 
thus
, 
 Galbreath has not successfully pleaded that BFI breached its duty.

Further, Galbreath's complaint does not sufficiently allege an injury proximately caused by the alleged breach of duty.  The 
Boyd
 court stated that to plead proximate cause "a plaintiff must allege sufficient facts to support a claim that the loss or destruction of the evidence 
caused the plaintiff to be unable to prove
 an underlying lawsuit."  (Emphasis in original.)  
Boyd
, 166 Ill. 2d at 196.  Galbreath here alleges that the
 
loss of the evidence caused it to be unable to prove an affirmative defense based on third-party modification of the equipment or
 
another intervening cause. 

BFI has argued that Galbreath has other defenses not dependent on the lost evidence.  Obviously, this is not relevant to a dismissal under section 2--615 unless taken as a contention that Galbreath must allege that the defense it claims it has lost is the only possible defense.  To remain consistent with 
Boyd
, clearly the plaintiff must allege that the destruction of evidence has caused the plaintiff to be unable to defend the underlying lawsuit.  Thus, Galbreath must allege specific facts that if proven would show that, due to the loss of evidence, it will lose the underlying case, and not that one specific defense will become unavailable to it.

Galbreath's allegation of proximate cause is conclusory; it fails to allege a nexus between the loss of the evidence and the loss of its chosen defense, and therefore it would be inadequate even without regard to extra pleading requirements created by the circumstances of this case.  The 
Jackson
 court required the plaintiffs to plead how the loss of X rays specifically prevented them from obtaining a certificate of merit for their malpractice claim.  
Jackson
, 294 Ill. App. 3d at 15.  Similarly, in 
Thornton v. Shah
, 333 Ill. App. 3d 1011, 1020-21 (2002), the court required a specific explanation of how phone records missing from the plaintiff's decedent's medical records prevented the plaintiff from proving the defendant's medical negligence.  Galbreath fails to plead specifically what it could have done with the equipment that it cannot do now,
 
or what it could have done in addition to its
 
original inspection
, 
and why this is critical to its defense.  Further, Galbreath has not alleged facts that would show why it can reasonably rely only on the defense it alleges it has lost. 

Galbreath faces an additional barrier.  It specifically alleges that the OSHA report indicated possible postmanufacture alterations to the equipment.  While this is helpful to Galbreath in that it suggests why postmanufacture alteration might be its best defense, it puts Galbreath in the position of having to plead what evidence it could have obtained from the equipment that it could not obtain from the report.  Such allegations are absent.

The circuit court dismissed Galbreath's complaint with prejudice.  A complaint should be dismissed with prejudice under section 2--615 only if it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to recover.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 488 (1994).  The decision to deny leave to amend is within the sound discretion of the trial court.  
Cantrell v. Wendling
, 249 Ill. App. 3d 1093, 1095 (1993); see also 
Clemons v. Mechanical Devices Co.
, 202 Ill. 2d 344, 351 (2002).  However, the trial court should exercise its discretion liberally in favor of allowing amendments if doing so will further the ends of justice, and any doubts should be resolved in favor of allowing amendments.  
Cantrell
, 249 Ill. App. 3d at 1095.  We hold that the dismissal with prejudice was an abuse of discretion, given the unsettled nature of the law in this area.

Admittedly, this is a close case.
  The complaint dismissed was Galbreath's second spoliation of evidence complaint, and it appears to be little closer to successfully pleading a duty than the first.  The primary difference in this respect between the two complaints is that the first alleged that the undated letter was sent "shortly after the accident," whereas the second states that it was sent "shortly after" Galbreath's visual inspection
 
of the truck
 
and
 
attached hose and hoist.  The second complaint is thus stronger than the first only in that it suggests that the undated letter was likely responsive to 
BFI’s letter stating that the truck was to be returned to service.  On the other hand, as discussed above, the
 various districts of the appellate
 
court
 
have not been consistent in their interpretation of 
Boyd
.  Galbreath's reliance on 
Jones
 and 
Stinnes Corp.
 was reasonable.  Further, 
Boyd
 and 
Miller
 provide only limited guidance as to what constitutes a special circumstance leading to a duty.
  In light of our analysis and given the state of the law, we believe Galbreath should be allowed to replead.  

Accordingly, we affirm that portion of the trial court's order 
dismissing Galbreath's second-amended complaint under section 2--615, we reverse
 insofar as the dismissal
 
is
 
with prejudice, and we remand the cause to the trial court to allow Galbreath to replead and for further action consistent with this opinion.

Affirmed in part and reversed in part;  cause remanded with directions.

McLAREN, J., concurs.

     JUSTICE KAPALA, specially concurring:

     I agree with the majority's decision to reverse the judgment of the trial court and remand for further proceedings.  I write separately, however, because I disagree with the majority's reasoning, which I believe leads to impractical pleading requirements not dictated by our supreme court in 
Boyd v. Travelers Insurance Co.
, 166 Ill. 2d 188 (1995).  

     The majority correctly summarizes 
Boyd
's test to determine the existence of a duty to preserve evidence; however, I believe Galbreath's third-party complaint against BFI satisfies 
Boyd
's requirements.  According to the complaint, BFI secured and segregated the truck, hoist, and hose mechanism and invited a representative of Galbreath to view it.  After Galbreath briefly visually inspected the evidence at BFI's facility, Galbreath requested BFI to turn over the hose or, in the alternative, to preserve it.  The complaint alleges that BFI invited the Waukegan police department to investigate the accident.  OSHA also investigated it.  Either BFI or its insurer retained Triodyne Engineering to review the matter.  From these allegations, I think it is reasonable to infer that BFI was aware of the importance of this evidence and knew that litigation was in the offing.  These allegations are sufficient to state a duty under 
Boyd
.  In securing and segregating the evidence, BFI voluntarily assumed a duty to preserve it at a time when BFI knew that the equipment was relevant to future litigation.   
Boyd
 does not require anything more. 
 In 
Boyd
, the defendant's duty to preserve the heater was predicated upon its assuming a duty to preserve it where (1) it took physical possession of the heater when it (2) knew that the heater was evidence relevant to future litigation.  
Boyd
, 166 Ill. 2d at 195.

The majority concludes that the act of informing Galbreath that the truck would be placed back in service negates the assumption of the duty to preserve it.  In my view, its stated intention to place the truck back in service is irrelevant.  BFI assumed a duty to preserve the evidence.  BFI did not assume a duty to refrain from putting the equipment  back in service.  So long as the evidence is not altered in any material respect, a fact that is not borne out by this record, whether the truck was in service is not significant.  What is significant is that by securing and segregating the evidence BFI assumed a duty to preserve it.  That duty continues whether or not the truck is put back in service.  The analysis here might change if BFI had informed Galbreath that it was disposing of the truck on March 1, 2000, but such is not the case.   

     The majority is too strict and rigid in its interpretation and application of what it calls the relationship prong of 
Boyd
's test to establish a duty to preserve evidence.  In my view, the majority's approach goes beyond what was contemplated by our supreme court.
  This is made plain by our supreme court's opinion in 
Shimanovsky v. General Motors Corp.
, 181 Ill. 2d 112 (1998).  
Shimanovsky
 held that a potential litigant owes a duty "to take reasonable measures to preserve the integrity of relevant and material evidence."  
Shimanovsky
, 181 Ill. 2d at 121.  This duty, our supreme court said, "is based on the court's concern that, were it unable to sanction a party for the presuit destruction of evidence, a potential litigant could circumvent discovery rules or escape liability simply by destroying the proof prior to the filing of a complaint."  
Shimanovsky
, 181 Ill. 2d at 121.  Thus, for purposes of enforcing its discovery rules, our supreme court has imposed a duty to preserve evidence even in the absence of any relationship or court order.  The difference between the scope of the duty in 
Shimanovsky
 and 
Boyd
 is that 
Boyd
 employs traditional negligence principles, whereas the authority to sanction found in 
Shimanovsky
 is derived from the supreme court's  discovery rules.
  All 
Boyd
 does is erect a tort framework to allow a party who has been injured as a result of the destruction of evidence to recover damages.  Where the wrongs addressed by the two cases are identical, and the injuries forseeable, 
Boyd
 cannot be interpreted to contemplate a strict and rigid relationship test as a threshold to alleging a duty and remain consistent with the duty imposed in 
Shimanovsky
.  The majority creates an untenable anomaly.  Had it been Andersen, the first-party plaintiff, who got rid of the evidence, first-party defendant Galbreath could obtain sanctions in the form of barring any testimony concerning the equipment or even dismissal of Andersen's complaint.  See 
Ralston v. Casanova
, 129 Ill. App. 3d 1050, 1056-57 (1984).   But because BFI is not a party to the underlying suit, Galbreath is potentially left without a remedy unless it can sue BFI in tort for negligent spoliation of the same evidence.      

     The majority misconstrues the holding in 
Jackson v. Michael Reese Hospital & Medical Center
, 294 Ill. App. 3d 1, 10 (1997).  All 
Jackson
 required was that the plaintiff "sufficiently describe what affirmative conduct was voluntarily undertaken by the hospital."  
Jackson
, 294 Ill. App. 3d at 11.  There, the record  indicated that the hospital may have voluntarily assumed a duty to maintain the X rays where it had notice of the litigation and segregated the X rays into a separate litigation file.  
Jackson
, 294 Ill. App. 3d at 11.  The plaintiff in 
Jackson
, however, failed to plead these facts in the complaint.  
Jackson
, 294 Ill. App. 3d at 12.  In our case, Galbreath has sufficiently pleaded a voluntary assumption of duty giving rise to a duty to preserve the evidence. 

     Likewise, Galbreath pleaded breach of duty.  I believe all that is necessary to plead breach of duty is to plead the destruction of the evidence at a time when BFI knew or should have known that the evidence was relevant to future litigation.  Galbreath's complaint alleged that "[a]t all times since [d]ecedent's death, BFI knew or should have known that the truck, hoist and hose involved in [d]ecedent's death were material evidence in future or pending litigation arising from that death ***.   BFI breached its duty to preserve evidence by, among other things, selling the truck, hoist and hose and relinquishing possession, custody and control of that evidence to a third party."  These allegations are sufficient to plead breach of duty.

     The majority is mistaken when it concludes that "Galbreath has not pleaded any facts that would indicate that BFI should have known, prior to selling the equipment, that further inspection or testing of the equipment would provide additional information material to a potential civil action."  
 Slip op. at 10.  Galbreath pleaded that BFI called Waukegan police officers and other emergency personnel to the scene to conduct an investigation.  Galbreath also pleaded that BFI, either directly or through its insurer, hired its own engineers to investigate the incident.  Accepting all well-pleaded facts and inferences as true, the complaint shows that BFI was aware of the gravity of the situation and should have known that further testing of the equipment would provide additional material information.  Surely, if BFI thought it was necessary to bring in experts on this matter, it should have known that Galbreath should be given the opportunity to conduct an expert investigation of its own.  Moreover,
 Galbreath alleged that after the brief visual examination BFI permitted, it requested that the hose be turned over or, at the very least, be preserved.  Galbreath also pleaded that OSHA's investigation of the accident included several senior BFI employees.  OSHA's report intimated that BFI altered the product.  BFI should have known that expert testing by Galbreath would be necessary to explore this defense.  
  
    I further disagree with the majority's conclusion that Galbreath's complaint does not sufficiently allege an injury proximately caused by the alleged breach of duty.  "The preservation of an allegedly defective product is of upmost importance in both proving and defending against a strict liability action."  
Graves v. Daley
, 172 Ill. App. 3d 35, 38 (1988).   The second of the two paragraphs numbered 24 of plaintiff's complaint alleges: "If the truck, hoist and hoses had been preserved in their condition at the time of the incident and were available for inspection now and at the time of trial, that evidence would establish the lack of any defect attributable to Galbreath and/or the merit of one or more affirmative defenses based upon subsequent third-party modification or other intervening causes.  With the benefit of the evidence that BFI has improperly failed to preserve, Galbreath would be able to establish these defenses in the [u]nderlying [l]itigation.  Absent that evidence, Galbreath may not
 
be able to prove these defenses, and its ability to defend itself
 
in the [u]nderlying [l]itigation has been impaired."  I think this is sufficient.  The test set forth by the majority requires Galbreath to plead that it will lose the underlying case.  This is an impossible burden.  Short of clairvoyance, Galbreath cannot know  it will lose.  A judge or jury will have to decide whether Galbreath loses based upon a multitude of factors outside the issue of whether BFI improperly destroyed the equipment.  Also, this test is too close to the one rejected by 
Boyd
, that a plaintiff must plead that it would have prevailed in the underlying suit.  
Boyd
, 166 Ill. 2d. at 196 n.2.  Moreover, because Galbreath is a third-party plaintiff, BFI's liability to it is necessarily contingent upon the outcome of the underlying suit.    

    I further disagree that Galbreath has not pleaded a nexus between the destruction of the evidence and its loss of a defense.  Galbreath pleaded that an inspection of the lost evidence would establish that any defect was not attributable to Galbreath or was caused by third-party modification of the truck and hoist mechanism or other intervening causes.  Without the evidence, Galbreath cannot plead more specifically what the lost evidence would show.  
Boyd
 recognized that the causation element is satisfied where, due to the destruction of the evidence, the plaintiff is deprived of the opportunity to present expert testimony that the product was defective or dangerously designed.  
Boyd
, 166 Ill. 2d at 197.  Again, in this context, the majority reads more into 
Jackson
 than is there.  
Jackson
 simply required the plaintiff to plead the significance of the lost X rays.  
Jackson
,  294 Ill. App. 3d at 15.  Here, Galbreath has pleaded that the significance of the lost hose and related equipment was that they would demonstrate that any alleged defect was not attributable to  Galbreath or was the result of third-party modification or other intervening causes.  

     
Boyd
's analysis was not at all convoluted.  It was premised on the obvious: the allegedly defective product, maintained in the condition it was in at the time of the occurrence, aids in determining whether the product is defective and how the defect occurred, and is far more instructive to a fact finder than photographs or oral descriptions.  See 
Kambylis v. Ford Motor Co.
, 338 Ill. App. 3d ___, ___, 788 N.E.2d 1, 5 (2002).  It was found to be  sufficient in 
Boyd
 to allege that, as a result of the loss of the heater, no expert could testify without doubt whether the heater was defective or dangerously designed.  
Boyd
, 166 Ill. 2d at 197.  
Boyd
 did not require that the plaintiffs plead the significance of the heater to their cause of action.  

     The majority errs when, without citing authority, it posits that Galbreath must plead what evidence it could derive from the actual testing of the mechanism that it cannot obtain from the OSHA report.  First of all, I see nothing in 
Boyd
, 
Jackson
, or 
Thornton v. Shah
, 333 Ill. App. 3d 1011 (2002), that imposes such a pleading requirement.  Moreover, and as a matter of fact, there is no indication the OSHA report was made by an engineer competent to render expert opinions concerning the alteration of the mechanism or the effect of other intervening causes.  Also, Galbreath was entitled to have its own experts, rather than OSHA's, render opinions, an opportunity that was forever foreclosed.

    While Galbreath need not plead that it will lose the underlying case, its complaint needs to be more definite than it is.  Galbreath's complaint states, "Absent that evidence, Galbreath 
may  not
 be able to prove these defenses, and its ability to defend itself in the [u]nderlying [l]itigation has been impaired."  (Emphasis added.)  Galbreath needs to plead more than that it "may" not be able to prove its defenses.   

     I would prefer the following test: 
a party in Galbreath's position must be able to plead and prove that the destruction of evidence has significantly impaired its ability to advance a meritorious defense.  This test, I believe, is in keeping with 
Boyd
's requirement that a plaintiff must demonstrate that, but for the loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit.  
Boyd
, 166 Ill. 2d. at 196, 197 n.2.                               
 

     Thus, for the above reasons, I agree to reverse and remand to the trial court for further proceedings.