NO. 4-03-1080

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

KENNETH W. STRINGER,

          Plaintiff-Appellee,

          v.

PACKAGING CORPORATION OF AMERICA, a Delaware Corporation,

          Defendant-Appellant.

)

)

)

)

))))

Appeal from

Circuit Court of

Greene County

No. 03L5 

Honorable

James W. Day, 

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In May 2003, plaintiff, Kenneth W. Stringer, filed a strict-liability complaint against defendant, Packaging Corporation of America (PCA), seeking to recover for injuries he sustained when a box containing 30 dozen eggs gave way.  In July 2003, PCA filed a motion to bar evidence and to dismiss the complaint, which the trial court denied.  PCA filed a motion to reconsider, which the court denied.  However, in December 2003, the court certified the following question for interlocutory review, pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)):

"In a product[-]liability action[,] an allegedly defective box was destroyed by plaintiff's employer through no fault of the plaintiff.  The defendant filed a motion to bar evidence and dismiss the case on the basis that the box was unavailable for examination and testing.  Did the trial court err in denying the defendant's motion?"

We answer the certified question in the negative.  

I. BACKGROUND

According to Stringer's May 2003 complaint, on May 14, 2001, he was working at the Carrollton IGA Foodliners.  He lifted boxes from a refrigerated delivery truck onto a two-wheeled cart and then moved the cart to a refrigeration room.  While unloading the boxes inside the refrigeration room, the left access hole of one of the boxes ripped and broke.  Stringer tried to catch the box before it hit the ground, but the right access hole also ripped.  During this process, Stringer wrenched and injured his back.  

Stringer was taken to the hospital and treated for his injuries.  (He ultimately underwent fusion of some of his vertebrae.)  Before he returned to work at the IGA on May 29, 2001, Louis Baumgartner, another employee, disposed of the box, which was allegedly manufactured by PCA, in a compactor machine, destroying it.  

In July 2003, pursuant to Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)), PCA moved the trial court to impose sanctions upon Stringer by either (1) barring both direct and circumstantial evidence as to the condition of the allegedly defective box or (2) dismissing the strict-products-liability count of his complaint.  PCA also filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2002)), arguing that because the box that allegedly caused Stringer's injury was unavailable, PCA could not inspect the box and would thus suffer significant prejudice.

In response to PCA's motion, Stringer filed an affidavit, in which he averred that (1) the box was destroyed without his knowledge or consent; (2) because he was in the hospital, he was physically unable to prevent it from being destroyed; and (3) the box was not unique and, instead, was identical to other boxes manufactured by PCA for use by IGA stores in transporting "30 dozen eggs."  Stringer also filed Baumgartner's affidavit, in which he averred that (1) he witnessed Stringer's injury, inspected the box, and noticed the access holes were ripped; (2) the box was destroyed long before Stringer was able to return to work; and (3) the box was identical to other boxes used to transport "30 dozen eggs."  

On August 12, 2003, the trial court conducted a hearing on PCA's motion for sanctions and denied it.  In September 2003, PCA filed a motion to reconsider and, alternatively, a motion for a Supreme Court Rule 308 finding.  In support of those motions, PCA filed an August 29, 2003, affidavit of Daniel Hofer, general manager of supply services for PCA, in which Hofer averred that without the actual box, it would be impossible to (1) determine if PCA actually manufactured the box, (2) find a box from the same manufacturing lot, (3) determine whether the packer improperly set up the box or damaged it during set up, filling, or sealing processes, or (4) determine the cause of the alleged failure.  

Following a September 2003 hearing, the trial court denied PCA's motion to reconsider.  In December 2003, the court certified the question at issue here.         

II. ANALYSIS

The certified question asks us to determine whether (1) a plaintiff in a product-liability action is subject to discovery sanctions or (2) a product-liability claim is subject to dismissal when the allegedly defective product is destroyed through no fault of the plaintiff and without the plaintiff's knowledge or consent. 

A. Discovery Sanctions

Under Supreme Court Rule 219(c), a trial court may impose sanctions upon any party who unreasonably fails to comply with supreme court rules governing discovery or any court order entered pursuant to those rules.  166 Ill. 2d R. 219(c); 
Shimanovsky v. General Motors Corp.
, 181 Ill. 2d 112, 120, 692 N.E.2d 286, 289 (1998).  The decision to impose sanctions under Rule 219(c) lies within the trial court's discretion, and we will not reverse that court's decision absent an abuse of discretion.  
Shimanovsky
, 181 Ill. 2d at 120, 692 N.E.2d at 289.   

Potential litigants have a duty to take reasonable measures to preserve the integrity of relevant and material evidence.  
Shimanovsky
, 181 Ill. 2d at 121-22, 692 N.E.2d at 290.  In a strict-products-liability case, the preservation of the allegedly defective product is important to both the proof and the defense of the case.  
Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products Co.
, 262 Ill. App. 3d 636, 641, 634 N.E.2d 1319, 1323 (1994); see 
American Family Insurance Co. v. Village Pontiac-GMC, Inc.
, 223 Ill. App. 3d 624, 627, 585 N.E.2d 1115, 1118 (1992) (the physical object in the same condition as it was immediately following an accident may be far more instructive and persuasive to a jury than oral descriptions or photographs).
  However, if evidence is destroyed, altered, or lost, a defendant is not automatically entitled to a specific sanction.  
Shimanovsky
, 181 Ill. 2d at 127, 692 N.E.2d at 292.  Instead, the trial court should consider the particular factual circumstances of the case to determine what, if any, sanction is appropriate.  
Shimanovsky
, 181 Ill. 2d at 127, 692 N.E.2d at 292-93.  An order to dismiss with prejudice or the imposition of a sanction that results in a default judgment should be used only in those cases where a party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority.  
Shimanovsky
, 181 Ill. 2d at 123, 692 N.E.2d at 291.  

The facts in this case are distinguishable from the facts in the cases PCA cites in support of its claim that Stringer should be subject to sanctions.  Here, almost immediately following Stringer's injury and while he was still hospitalized, the box was destroyed by a third party over whom Stringer had no control.  In the cases PCA cites, the plaintiffs had control over either (1) the product's destruction or (2) the product itself.  See 
Kambylis v. Ford Motor Co.
, 338 Ill. App. 3d 788, 791, 788 N.E.2d 1, 3 (2003) (the plaintiff received notice that his vehicle would be destroyed if accommodations were not made with the impound lot); 
Farely Metals, Inc. v. Barber Coleman Co.
, 269 Ill. App. 3d 104, 111, 645 N.E.2d 964, 968 (1994) (appellate court concluded that the plaintiff had notice of impending destruction of artifacts stored in a warehouse and was in arrears for the storage costs); 
Shelbyville Mutual Insurance Co.
, 262 Ill. App. 3d at 642, 634 N.E.2d at 1324 (an allegedly defective grill was in the plaintiff's sole possession); 
American Family Insurance Co.
, 223 Ill. App. 3d at 626, 585 N.E.2d at 1117 (vehicle was destroyed with the plaintiff's permission after the plaintiff's expert removed an allegedly defective wire); 
Graves v. Daley
, 172 Ill. App. 3d 35, 37, 526 N.E.2d 679, 681-82 (1988) (the plaintiffs destroyed an allegedly defective furnace after receiving permission from their insurance-company subrogee).

We also decline PCA's invitation to read 
Miller v. Gupta
, 174 Ill. 2d 120, 672 N.E.2d 1229 (1996), as supporting the imposition of sanctions even when a party is not at fault in the destruction of evidence.  
Miller
 was neither a products-liability case nor a case involving discovery sanctions under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)).  Instead, it involved the plaintiff's failure to attach a section 2-622 certificate of merit (735 ILCS 5/2-622 (West 1994)) to a medical malpractice complaint.  
Miller
, 174 Ill. 2d at 127-28, 672 N.E.2d at 1232-33.   Rule 219(c) permits sanctions only where a party unreasonably fails to comply with a discovery order.  A party who had nothing to do with the destruction of evidence cannot be said to have unreasonably failed to comply with a discovery order.  Before noncompliance can be unreasonable, a party must have been in a position to comply.  Here, the destruction of the box cannot be imputed to Stringer.  As discussed above, nothing in the record suggests Stringer ever had control over the box or the ability to comply with PCA's discovery request.  While we acknowledge PCA may experience difficulty in preparing a defense without the box, the trial court's decision to deny PCA's motion for discovery sanctions was not an abuse of discretion.  Simply put, no discovery violation occurred here.  

B. Motion To Dismiss

Although not set out as a separate argument in its brief, PCA also argues that this case should be dismissed because, without the box, it would essentially be denied due process and fundamental fairness.  Relying upon Hofer's affidavit, which was filed along with PCA's motion to reconsider, PCA contends that the destruction of the box effectively denied it the ability to defend this lawsuit because it (1) prevented PCA from asserting several affirmative defenses, including altered condition; (2) prevented PCA from inspecting and testing the allegedly defective box; and (3) effectively denied PCA the ability to dispute or refute plaintiff's claims regarding the box's condition or manufacturing.   

1. 
PCA's
 
Motion
 
To
 
Reconsider
     

The fatal weakness in PCA's argument is that Hofer's affidavit, which is crucial to PCA's position, was not properly before the trial court on the motion to reconsider.  The purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law.  The decision to grant or deny a motion to reconsider lies within the trial court's discretion, and we will not disturb the court's ruling absent an abuse of discretion.  
Broadnax v. Morrow
, 326 Ill. App. 3d 1074, 1082, 762 N.E.2d 1152, 1158 (2002).

PCA filed Hofer's August 29, 2003, affidavit in support of its motion to reconsider after the trial court's August 12, 2003, denial of PCA's motions for discovery sanctions and dismissal.  PCA did not contend that the affidavit was newly discovered evidence or that, with due diligence, it could not have presented the court with this information earlier.  PCA merely stated in its motion to reconsider that the affidavit "further demonstrates the unfairness of this case going forward since [Stringer] cannot prove his case and [PCA]'s due process is deprived by having to defend the instant lawsuit."  

Motions to reconsider are retrospective in nature.  When a party seeks to have a motion to reconsider granted on grounds of newly discovered evidence, the movant must provide a reasonable explanation for why the evidence was not available at the time of the original hearing.  
Woolums v. Huss
, 323 Ill. App. 3d 628, 640, 752 N.E.2d 1219, 1229 (2001); see also 
In re Ashley F.
, 265 Ill. App. 3d 419, 426, 638 N.E.2d 368, 373 (1994) ("To justify a rehearing on the basis of newly discovered evidence, there must be a showing of due diligence and a demonstration that justice has not been done").  In 
Gardner v. Navistar International Transportation Corp.
, 213 Ill. App. 3d 242, 248-49, 571 N.E.2d 1107, 1111 (1991), this court explained the policy underlying this requirement, as follows:

"Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.  Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency 
require
 that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be."  (Emphasis in original).

To present newly discovered evidence, a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable.  In the present case, PCA has made no showing why Hofer's affidavit could not have been discovered and provided to the trial court in support of PCA's original motions for discovery sanctions and dismissal.  We note that Stringer filed his affidavits before the court decided the original motion, and those affidavits contained evidence properly before the court.  Hofer's affidavit did not.

2. 
Motion
 
To
 
Reopen
 
Proofs

Alternatively, after the trial court's decision denying PCA's motions for sanctions or dismissal, PCA could have filed a motion to reopen proofs if it wanted to get Hofer's affidavit before the court.  The decision whether to grant a motion to reopen proofs lies within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion.  
Chicago Transparent Products, Inc. v. American National Bank & Trust Co. of Chicago
, 337 Ill. App. 3d 931, 942, 788 N.E.2d 23, 32 (2002).  The factors to be considered in determining whether a party should be permitted to reopen proofs include (1) whether the failure to introduce the evidence occurred because of inadvertence or calculated risk, (2) whether the adverse party will be surprised or unfairly prejudiced by the new evidence, (3) whether the new evidence is of the utmost importance to the movant's case, and (4) whether any cogent reason exists to justify denying the request.  
Polk v. Cao
, 279 Ill. App. 3d 101, 104, 664 N.E.2d 276, 279 (1996).  Further, if evidence offered for the first time in a posttrial motion could have been produced at an earlier time, the court may deny its introduction into evidence on that basis.  
Chicago Transportation Products
, 337 Ill. App. 3d at 942, 788 N.E.2d at 32.  

In this case, PCA did not move to reopen proofs so that Hofer's affidavit could properly be considered by the trial court.  We note that the trial court's September 22, 2003, docket entry, containing the denial of PCA's motion to reconsider, makes no reference to Hofer's affidavit.  For all we know, the trial court never considered it.  On this record, that action (or inaction, to be more precise) would have been entirely justified.  We thus conclude that the court did not err by denying PCA's motion to dismiss.   

III. CONCLUSION

For the reasons stated, we answer the trial court's certified question in the negative
.

Certified question answered.

APPLETON, J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

I disagree with the statement that "'[c]ivil proceedings already suffer from far too many delays, and the interests of finality and efficiency 
require
 that the trial courts not consider such late-tendered evidentiary material, no matter what the contents may be.'"  (Emphasis in original.)  Slip op. at  9, quoting 
Gardner
, 213 Ill. App. 3d at 248-49, 571 N.E.2d at 1111.  I would not place any such arbitrary restriction on the broad discretion possessed by the trial courts.  I also disagree with the suggestion that it is important whether the motion is labeled a "motion to reopen proofs."  We should look to the substance of the motion, not its title.    

Certainly trial courts may choose not to consider additional evidentiary material, reasoning that the litigant has had a full opportunity to present his evidence and going through another hearing would be a waste of time.  In some cases, however, the court may appropriately conclude that the best way, the most certain way, to resolve the matter is to consider the evidence and reaffirm the previous ruling.  Alternatively, a court may conclude that it is more important to be right than it is to be efficient.  Standing by erroneous interlocutory rulings usually has consequences.  

Not every motion to reconsider is an abuse of the legal process.  For example, sometimes the opponent at the motion hearing raises issues that no one thought were disputed, issues easily refuted by an additional affidavit.  The practice of law is not a matter of precision; even the best lawyers know more about their case as it progresses than they did when it began.

The automatic denial of motions to reconsider may not lead to the speedy resolution of a case.  In this case, for example, there was a motion to dismiss.  If that motion should have been granted, it will be a waste of time and effort to go ahead with a trial and wait for the case to be decided on a directed verdict or judgment 
n.o.v
.

In any event, trial judges are free to ignore the quoted language from 
Gardner
.  I cannot imagine that we would ever reverse a final order, otherwise properly rendered, because the trial court has considered "such late-tendered evidentiary material."  The quoted language is accordingly only advice to trial courts, but it is not good advice.