NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180416-U

NO. 4-18-0416

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 22, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GALEN E. MILLER, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Piatt County |
| DIANE TERANDO, | ) | No. 11MR14 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Wm. Hugh Finson, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Defendant forfeited any challenge to the trial court's imposition of a surcharge against her by failing to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018), as to the form and content of her appellant's brief.

(2) The trial court did not abuse its discretion in denying defendant's motion to reopen proofs where defendant could have presented the additional evidence during earlier proceedings.

¶ 2    Plaintiff, Galen E. Miller, filed a complaint for a declaratory judgment against defendant, Diane Terando, alleging he was the beneficiary of a trust in which she was the trustee and asking the trial court to order defendant to provide him with an inventory and accounting of her trust-related activities. The court granted summary judgment in favor of plaintiff and ordered defendant to file an inventory and accounting. Defendant filed an "Accounting" to which plaintiff objected on the basis that it was not sufficiently detailed. Following an evidentiary hearing on

plaintiff's objections, the court granted plaintiff's request to assess a surcharge against defendant for unsupported trust expenditures of $392,519.46. Defendant appeals, challenging the court's surcharge assessment and its denial of a motion she filed to reopen proofs to present the testimony of an accountant. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Plaintiff and defendant are the children of Wanda M. Miller (deceased January 14, 2010) and Paul B. Miller (deceased March 3, 1994). Over the course of their lives, Wanda and Paul jointly and individually executed multiple trusts, including a trust dated August 15, 1985, which defendant signed as trustee. The trust provided that the income of the trust would be distributed by the trustee to Wanda and, upon Wanda's death to Paul. Upon the deaths of both Wanda and Paul, the trust principal was to be distributed in equal shares to plaintiff and defendant.

¶ 5        On April 27, 2011, plaintiff filed a complaint for declaratory judgment against defendant, alleging he was a beneficiary of a trust in which defendant had been appointed "as Successor Trustee." Plaintiff alleged that as beneficiary he was entitled to information regarding the trust, including an inventory of trust assets and their estimated values, and an accounting of the trust balance from the date of Wanda's death "until present." Plaintiff further asserted that although he had requested trust-related documents from defendant, she had failed to provide any documents to him.

¶ 6        On June 17, 2015, plaintiff filed an amended complaint for declaratory judgment, alleging he was a beneficiary of additional trusts established by the parties' parents, including the August 1985 trust. He also alleged that defendant "acted as [t]rustee of at least one of the [t]rusts," asserting she filed fiduciary income tax returns in 2005, opened bank accounts and signed checks

- 2 -

in the capacity of a trustee, "recorded an Appointment of Successor Trustee" for one of the trusts, and acted as trustee of one of the trusts in the sale of her parents' personal residence. Again, plaintiff asserted that he requested information regarding the trusts from defendant but that she had failed to provide the information to him.

¶ 7 Defendant filed an answer to plaintiff's complaint, denying that she failed to provide plaintiff with documents in satisfaction of his request. As an affirmative defense, she asserted that an actual controversy did not exist because she had provided plaintiff with all necessary information.

¶ 8 On July 27, 2015, plaintiff filed a motion for summary judgment, alleging there was no dispute as to the material facts in the case and he was entitled to judgment as a matter of law. On September 18, 2015, the trial court granted plaintiff's motion and ordered defendant to file, within 60 days, "an inventory and an accounting of all monies received and disbursed by her as trustee."

¶ 9 On December 4, 2015, plaintiff filed a petition for adjudication of indirect civil contempt. He alleged defendant had not filed an inventory or accounting as ordered by the trial court and that her failure to comply with the court's September 2015 order was willful and without just cause. Plaintiff asked that the court require defendant to purge herself of contempt by complying with the court's order.

¶ 10 On December 30, 2015, counsel for both parties appeared before the trial court. Defendant's counsel represented that defendant would comply with the court's September 2015 order within 21 days. The court's docket entry shows that it gave defendant until February 17, 2016, to provide "the ordered materials" and that if they were not filed, she would be "arraigned

on the contempt petition."

¶ 11      On January 20, 2016, defendant filed a document titled "ACCOUNTING," which contained a list of 15 bank accounts from three different banks. She also provided documents showing the deposits, withdrawals, and balances for those accounts. Defendant's filings indicated the bank accounts were associated with the "Wanda MILLER TRUST."

¶ 12      On February 16, 2016, plaintiff filed an objection to defendant's accounting and supplement to his December 2015 petition for adjudication of indirect civil contempt, alleging defendant "did not include a proper Inventory" in her filing. Specifically, he asserted defendant failed to set forth the date she became trustee; identify the assets in the trust at the time she became trustee; explain the origin of trust property; explain how trust money was spent from accounts that had "final withdrawal" entries; identify the purpose of various expenditures, including expenditures to her husband and children; provide "source documents," such as bank statements, cancelled checks, paid receipts, invoices, and bills; explain activities she undertook with respect to Wanda's residence; and account for insurance policies or annuities funded by the "Wanda Miller Trust."

¶ 13      Plaintiff asked the trial court to hold defendant in indirect civil contempt until she provided a proper accounting and inventory of assets. Alternatively, in the event defendant asserted she could not provide further documentary details, he asked the court to enter a surcharge order in the amount of $481,744.37, "representing the aggregate unsupported expenditures in the Accounting without proper identification and documentation." On April 20, 2016, plaintiff amended his objection, requesting that the trial court award him half of a 6.3-acre parcel of land that defendant represented "was covered by the [t]rust or [t]rusts" at issue.

¶ 14      On June 1, 2016, the trial court conducted a hearing on plaintiff's objections to

defendant's "Accounting" and his petition for adjudication of indirect civil contempt. Defendant testified and agreed that "[a]t some point in time," she "became trustee of at least one of [her] mother's trusts." Specifically, she acknowledged signing a "Declaration of Trust" dated August 15, 1985, and being named as trustee for that trust. Defendant testified she did not know what funds Wanda used "to invest through [that] trust" and defendant was not told what funds were going into the trust. She agreed that the trust provided that "the money" from the trust was to be distributed "50/50" between plaintiff and herself.

¶ 15　　　　Defendant further acknowledged that she caused tax returns to be filed for the August 1985 trust as early as 2005. However, she asserted that, otherwise, Wanda handled her own financial affairs, including all "trust activities" until 2007, when she had a stroke. Prior to 2007, Wanda was the person making bank transfers, deposits, and withdrawals. Defendant asserted that although she was named as trustee, she was "not actually the acting trustee."

¶ 16　　　　After Wanda's stroke in 2007, defendant began handling Wanda's financial affairs. She stated she was "paying checks" and kept a record of her activities in the "memo statement" on the checks she paid. She acknowledged that she did not prepare an annual report for Wanda after 2007, stating "[i]t was not asked for." Defendant also agreed that after Wanda's death in 2010, she never provided "an itemization of financial receipts that [she] received" as trustee to anyone. After plaintiff's complaint was filed in 2011, defendant "requested a copy of the checks from the bank accounts" in an effort to provide information on the details of her transactions. She testified she received the checks and "turned them over to [her] lawyer."

¶ 17　　　　Defendant stated that Wanda had insurance policies at the time of death, some of which were payable to the trust. She asserted she divided the insurance money between plaintiff

and herself and that plaintiff "received the check." According to defendant, Wanda also had annuities that were payable on death. Defendant stated those also "went to the bank." She testified that deposits connected with both the insurance and the annuity payments should have been reflected in the "Accounting" she filed. Other deposits of money shown in her "Accounting" came from certificates of deposit that were titled in Wanda's trust.

¶ 18    Defendant testified that Wanda owned a 6.3-acre parcel of land that was not sold after her death and was "[i]n the trust." According to defendant, half of the parcel was owned by plaintiff and half was owned by defendant and her husband. Defendant did not know what the property was worth. She stated it was rented out for farming and she received $800 a month for plaintiff's half and $800 a month for her own half. On occasion, she sent plaintiff his portion of the money; however, some years she needed the money "to pay some bills" and put the money "into the trust account." Defendant testified she kept the $800 she received as rent for her and her husband's half of the property.

¶ 19    Defendant further testified that when she began handling Wanda's affairs, she brought the financial records that Wanda had to her own home. Those record included "bills that [Wanda] had paid." Defendant stated she did not believe she had all of the bills, but she did have some of them. The financial records that she found, she gave to her lawyer. Defendant asserted that she also asked the bank to reproduce records. She obtained cancelled checks from the bank but acknowledged that she did not attach copies of the cancelled checks to her "filing with the court."

¶ 20    Defendant also acknowledged that the accounting records she submitted showed loans to her children. Specifically, she stated she loaned $11,000 to her son, which he had repaid,

- 6 -

and loaned $5000 to her daughter, which had not been repaid.

¶ 21　　　　Plaintiff testified and denied ever receiving any information about Wanda's finances from defendant prior to the filing of his lawsuit in 2011. He testified he received "bits and pieces" of information after 2011, but nothing other than what defendant provided through court proceedings. Plaintiff did recall receiving a check "for some income" from defendant. He stated he "got a couple of checks, but then they quit." He agreed that he received a $66,000 check that defendant represented "was just money in the estate that she was disbursing."

¶ 22　　　　Following the parties' testimony, they agreed to submit written closing arguments and the trial court took the matter under advisement. On July 1, 2016, plaintiff filed his written closing argument. He recounted the history of the case and the evidence presented at the hearing. Plaintiff argued that defendant never provided a proper inventory and accounting of her activities as trustee for the August 1985 trust and that her testimony indicated there were no "additional material documents available" with respect to her trust-related actions. He noted that his original request for a surcharge order "included expenditures with improper documentation" totaling $481,744.37. Plaintiff then conceded that defendant had accounted for $162,660.50 of those expenditures. However, he also asserted there were additional expenditures that should be added to the surcharge list, including the loan to defendant's son ($11,000), unaccounted for rent on the 6.3-acre parcel ($13,600), a loan to defendant's daughter ($1500), an unexplained check ($3837.22), and insufficiently documented annuity amounts ($50,998.37). Plaintiff maintained the proper surcharge amount was $400,019.46. Later, he amended that amount to $403,519.46, to reflect a loan to defendant's daughter in the amount of $5000, not $1500.

¶ 23    On August 17, 2016, defendant filed a motion to reopen proofs for further testimony. She alleged that, if permitted, she would call employees of the banks where funds of the August 1985 trust were invested. Defendant alleged that one of those employees, Linda Webb, would testify that, from 1985 until after her stroke, Wanda "handled [the August 1985] [t]rust by herself making all investment decisions." Another bank employee, Stacey Sheff, would testify regarding "many of the transactions involving the [t]rust in later years including *** re-investment of funds and transfers between accounts." Defendant further alleged she would call Chris Leman, the person who prepared the tax returns for the August 1985 trust, and that he would testify that his firm maintained returns for the trust dating back to 1997. Finally, defendant alleged that she herself could testify to establish the extent of her involvement as trustee before and after her mother's death and to provide information regarding insurance, annuities, and "other financial transactions."

¶ 24    On September 21, 2016, the trial court conducted a hearing in the matter and denied defendant's motion to reopen proofs. It found defendant had "ample opportunity" to call her alleged witnesses during prior proceedings. The court also noted that defendant had testified in plaintiff's case during the June 1, 2016, hearing that Wanda handled her own affairs, rendering some of the additional testimony she wished to present cumulative of other evidence.

¶ 25    On October 26, 2016, the parties presented oral arguments to the trial court. The court then ruled in plaintiff's favor and determined that a surcharge order against defendant was appropriate. In so holding, the court noted that defendant signed the declaration of trust for the August 1985 trust as "an initial trustee" and, thus, "was aware of the existence of that trust from its first day." Upon Wanda's death, the trust "ended" and all of its property was to be paid out

equally to plaintiff and defendant. The court then noted the duties of a trustee as set forth by statute and found as follows:

> "What is clear to the court is that [defendant] failed to comply with [statutory requirements for trustees] in a variety of ways. She doesn't appear to have kept any records on the trust receipts or expenses other than bank statements. She provided no accountings of the trust assets, income and disbursements until after this case was filed. She never prepared an inventory of what was in the trust. In the accounting she did eventually file, there were a number of expenses that were shown only by check number, with no indication of who they were paid to or what they were for. In other documents attached to the accounting filed in January of this year, there are receipts that are shown, interest, that sort of thing, and there's also a large number of withdrawals that are labeled just as withdrawal, and then the dollar amount withdrawn is shown. No indication of what was done with the money."

The court further noted that defendant improperly loaned money from the trust to her son and daughter, titled trust property (the 6.3-acre parcel of land) in the names of her husband and herself, collected rent from the 6.3-acre parcel "but never accounted to [plaintiff] for it," and failed to account for or explain where the money in various bank accounts came from or went.

¶ 26     The trial court additionally found that defendant was not excused from performing her duties as trustee based on her claim that Wanda insisted on handling her own affairs. Instead, the court stated that from August 15, 1985, defendant had all the statutory duties and obligations imposed upon a trustee. Further, the court noted evidence in the record that, contrary to defendant's claims, there were times she acted as trustee prior to her mother's stroke in 2007.

¶ 27     In determining the proper amount of the surcharge order, the trial court noted plaintiff originally identified unexplained withdrawals from defendant's January 2016 "Accounting" of $481,744.37, but that he acknowledged defendant later properly accounted for $162,660.50 of those withdrawals, reducing plaintiff's claimed surcharge total to $319,083.87. The court then agreed that the following amounts alleged by plaintiff should be added to the surcharge amount: (1) rent payments of $13,600 for half of the 6.3-acre parcel; (2) an annuity payout of $50,998.37 that did not appear in defendant's accounting; (3) the $5000 loan to defendant's daughter that had not been repaid; and (4) an unexplained check for $3837.22 "written on the trust payable to Busey [Bank]." The court did not add $11,000 for the loan to defendant's son to the surcharge amount because that loan had been repaid. It then assessed a total surcharge of $392,519.46.

¶ 28     On November 2, 2016, defendant filed a motion to reconsider. She argued she had been unable to produce financial records prior to 2006 due to the acquisition of one bank by another and because other records had been in Wanda's possession; the trust was primarily operated by Wanda and she had only limited and occasional involvement with the trust; plaintiff never complained about the operation of the trust to Wanda; rent money for the 6.3-acre parcel was deposited into a trust account; the $50,998.37 annuity payout was documented in "an attachment to the Successor Trustee Report [she] filed in September 12, 2011"; the surcharge resulted "in an amount that exceed[ed] the value of the [t]rust"; and she provided records for bank activities since 2006 that showed "the investment and reinvestment of funds and the transfers."

¶ 29     On November 10, 2016, plaintiff filed a motion for judgment on the trial court's surcharge order. He alleged that half of the surcharge amount belonged to him and asked the court to enter a judgment in his favor and against defendant in the amount of $196,259.73.

¶ 30      On December 21, 2016, defendant filed a motion to reopen the case for further testimony and evidence. Like in her previous motion to reopen proofs, defendant asked to present testimony from bank employees (Webb and Sheff) who were familiar with trust-related activities; the person who had prepared income tax returns on behalf of the trust (Leman); and of herself. Further, she alleged that she had retained an accountant, Kelly Finet, who could testify "in detail that she was able to trace almost all of the transactions from where the funds were invested and then where they were re-invested."

¶ 31      Also, on December 21, 2016, defendant filed a "POST TRIAL MOTION," asking for "reconsideration on several findings," a judgment notwithstanding the verdict, or a new trial. Defendant raised essentially the same allegations as in her other filings.

¶ 32      On May 16, 2018, the trial court conducted a hearing on defendant's various motions and on plaintiff's motion for judgment on the court's surcharge order. During the hearing, defendant argued that the court's calculation of the surcharge was improper because, plaintiff calculated the proposed surcharge based upon the incorrect assumption that each time a withdrawal from an account identified in the "Accounting" had been made, it constituted a sum that was not reinvested in another identified account. Defendant argued that, because she had not realized that plaintiff erred in his calculation of the surcharge until late in 2016, she should be allowed to present Finet's testimony to explain that all of the withdrawals in the "Accounting" were properly accounted for and documented. Defendant further argued that she was unable to present this testimony during earlier proceedings because she "didn't have the funds available to do it" and "didn't realize that the computation *** was *** double counted." Defendant also asserted that she should be allowed to present testimony from the bank employees where trust accounts were held prior to

Wanda's death to confirm that Wanda "basically controlled everything about this activity."

¶ 33    The trial court denied each of defendant's motions. With respect to defendant's motion to reopen the case, the court found that defendant failed to explain why the evidence she wished to present was previously unavailable and determined that she could have produced the evidence during the prior evidentiary hearing. The court then entered judgment against defendant in the amount of $196,259.73, plus costs.

¶ 34    This appeal followed.

¶ 35                                II. ANALYSIS

¶ 36                          A. Imposition of Surcharge

¶ 37    On appeal, defendant first argues the trial court erred by assessing a surcharge against her in the amount of $392,519.46.

¶ 38    "A trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615, 863 N.E.2d 743, 754 (2007). A surcharge is "[t]he amount that a court may charge a fiduciary that has breached its duty." Black's Law Dictionary (11th ed. 2019); see also Restatement (Third) of Trusts § 95 (2012) ("If a breach of trust causes a loss, including any failure to realize income, capital gain, or appreciation that would have resulted from proper administration, the beneficiaries are entitled to restitution and may have the trustee surcharged for the amount necessary to compensate fully for the consequences of the breach."). Generally, "[t]o state a claim for breach of fiduciary duty, it must be alleged and ultimately proved: (1) that a fiduciary duty exists; (2) that the fiduciary duty

- 12 -

was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69, 983 N.E.2d 414.

¶ 39 Further, where the trial court hears witnesses and resolves conflicting facts, "a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 251, 779 N.E.2d 1115, 1130 (2002). "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* at 252.

¶ 40 Here, plaintiff initially filed a cause of action against defendant for declaratory judgment, seeking an order that he was entitled to an inventory and accounting of defendant's trust-related activities. Ultimately, the trial court granted summary judgment in plaintiff's favor and ordered defendant to file an inventory and accounting of all the money she received and disbursed as trustee. After defendant submitted an accounting, plaintiff objected on the basis that it was deficient and contained several unexplained expenditures. Plaintiff asked that defendant be held in indirect civil contempt until she furnished a sufficiently detailed inventory and accounting. Alternatively, if defendant could not provide any further documentation, plaintiff asked that the court enter a surcharge order against her. Following an evidentiary hearing, the court determined defendant had failed to satisfy her duties as trustee in several respects and assessed a surcharge against her.

¶ 41 On appeal, defendant claims the trial court's surcharge assessment was against the manifest weight of the evidence. However, because she has failed to set forth any clear and reasoned argument to support her claim, we find the issue is forfeited.

¶ 42        Illinois Supreme Court Rule 341 (eff. May 25, 2018), sets forth the rules for the form and content of appellate court briefs. Rule 341(h)(7) requires that an appellant's brief contain an "Argument" section, which must set forth "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id.*; see also *Hollenbeck v. City of Tuscola*, 2017 IL App (4th) 160266, ¶ 27, 72 N.E.3d 880 ("Bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are deemed waived." (Internal quotation marks omitted.))

¶ 43        In the argument section of her brief, defendant failed to clearly articulate the basis of her challenge to the trial court's surcharge order. First, she does not challenge the court's authority to assess a surcharge against her and, in fact, concedes in her reply brief that a surcharge was "appropriate" based upon her loan of trust assets to one of her children. Second, although defendant makes some assertions of fact that might suggest a challenge to the court's determination that she failed to fulfill her duties as trustee, she never actually provides any reasoned argument or legal authority to support such a claim.

¶ 44        At most, defendant's brief sets forth a challenge to the amount of the surcharge assessed by the court on the basis that it was excessive and would unjustly enrich plaintiff. However, while defendant cites some general legal authority to support such a claim, she, again, fails to develop a reasoned argument as to the issue. Defendant states that "[i]t appears that every time there was a reinvestment of the initial funds, there was an [*sic*] claim of unaccounted for withdrawals." However, she does not analyze this claim in any detail or with sufficient explanation.

Significantly, she also failed to support her allegations of "reinvestment" rather than "withdraw-als" with appropriate citations to the appellate record.

¶ 45        Ultimately, defendant's argument on appeal as to the trial court's surcharge assessment is undeveloped such that our review of the complex financial issues in the case has been frustrated. We note that "a reviewing court is not simply a depository into which a party may dump the burden of argument and research" (*People ex rel. Illinois Dept. of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56, 4 N.E.3d 1); however, that is essentially the effect of defendant's failure to comply with Rule 341 in this instance. Accordingly, we find defendant has forfeited her challenge to the court's surcharge assessment.

¶ 46                    B. Motion to Reopen Proofs

¶ 47        Trustee next argues that the trial court abused its discretion in denying her December 21, 2016, motion to reopen the case so that she could present the testimony of Kelly Finet, an accountant.

¶ 48        To determine whether a party should be permitted to reopen a case and present additional evidence, the trial court must consider:

> "(1)  whether the failure to introduce the evidence occurred because of inadvertence or calculated risk, (2) whether the adverse party will be surprised or unfairly prejudiced by the new evidence, (3) whether the new evidence is of the utmost importance to the movant's case, and (4) whether any cogent reason exists to justify denying the request." *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141, 815 N.E.2d 476, 482 (2004).

"[I]f evidence offered for the first time in a posttrial motion could have been produced at an earlier

time, the court may deny its introduction into evidence on that basis." *Id.* at 1142. "The matter of allowing a case to be opened up for taking further evidence rests in the sound judicial discretion of the trial court and will not be interfered with except for clear abuse." (Internal quotation marks omitted.) *Crothers v. LaSalle Institute*, 68 Ill. 2d 399, 408, 370 N.E.2d 213, 217 (1977).

¶ 49     Here, the trial court denied defendant's motion to reopen the case, finding that all the evidence she sought to present could have previously been produced. On appeal, defendant does not challenge the court's finding. She simply offers no explanation as to why she waited to obtain an accountant to review the trust accounts until well after (1) plaintiff filed objections to her January 2016 "Accounting," in which he identified specific unexplained transactions in the materials she provided and (2) the trial court conducted an evidentiary hearing. Accordingly, we find no abuse of discretion by the court in denying defendant's motion.

¶ 50                              III. CONCLUSION

¶ 51     For the reasons stated, we affirm the trial court's judgment.

¶ 52     Affirmed.