NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200322-U

NO. 4-20-0322

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 14, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KEITH O. ANGLIN, Individually and as Executor of the Estate of Diana F. Anglin, Deceased, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Champaign County |
| v. | ) | No. 16L66 |
| THE CARLE FOUNDATION HOSPITAL; CARLE HOLDING COMPANY, INC., d/b/a CARLE CLINIC ASSOCIATION; CARLE HEALTHCARE, INC., d/b/a CARLE PHYSICIAN GROUP; ROBERT GURTLER, M.D., Individually and as an Employee, Agent and Servant of CARLE FOUNDATION HOSPITAL, CARLE HOLDING COMPANY, INC., and CARLE HEALTH CARE, INC.; RICHARD PEARSON, M.D., Individually and as an Employee, Agent and Servant of CARLE FOUNDATION HOSPITAL, CARLE HOLDING COMPANY, INC., and CARLE HEALTHCARE, INC.; STEPHEN DOLAN, M.D., Individually and as an Employee, Agent and Servant of CARLE FOUNDATION HOSPITAL, CARLE HOLDING COMPANY, INC., and CARLE HEALTHCARE, INC.; HARI PUTTAGUNTA, M.D., Individually and as an Employee, Agent and Servant of CARLE FOUNDATION HOSPITAL, CARLE HOLDING COMPANY, INC., and CARLE HEALTHCARE , INC.; SREENU CHAKUMGAL, M.D., Individually and as an Employee, Agent and Servant of CARLE FOUNDATION HOSPITAL, CARLE HOLDING COMPANY, INC., and CARLE HEALTHCARE, INC.; NIHINLOLAWA IJAMAKINWA, M.D., Individually and as an Employee, Agent and Servant of CARLE FOUNDATION HOSPITAL, CARLE HOLDING COMPANY, INC., and CARLE HEALTHCARE, INC.; VALERIE POLLARD, D.O., Individually and as an Employee, Agent and Servant of CARLE FOUNDATION HOSPITAL, CARLE HOLDING COMPANY, INC., and CARLE HEALTHCARE, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

Defendants-Appellees.

) Honorable
) Jason Matthew Bohm,
) Judge Presiding.

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    In denying the plaintiff's motion seeking to extend his time to disclose Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) expert witness information, the circuit court incorrectly applied Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) and its good cause standard, instead of Illinois Supreme Court Rule 219 (eff. July 1, 2002). The court further erred in granting summary judgments in favor of defendants based on this ruling because said ruling prevented plaintiff from offering the expert testimony necessary to succeed in a medical malpractice action.

¶ 2    This is a medical malpractice action arising out of the knee replacement surgery and ensuing death of Diana Anglin (Diana). The circuit court entered an Illinois Supreme Court Rule 218 (eff. July 1, 2014) scheduling order on November 18, 2019, setting trial for April 5, 2021, and directing plaintiff to provide Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) expert witness disclosures by February 10, 2020. Plaintiff's attorney did not file the disclosures before the requisite date, and a month later defendants filed motions for summary judgment and a motion to bar plaintiff's expert witnesses. Plaintiff responded and sought leave to immediately provide the information. The court heard argument on the motions and denied plaintiff's request for an extension. The court found plaintiff failed to show good cause pursuant to Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011), and therefore it had no discretion to allow the late answers or extend the time for disclosure. Because plaintiff could then not call any expert witnesses, which are necessary to prosecute a medical malpractice claim, the court granted defendants' motions for summary judgment. For the reasons that follow, we reverse the judgment of the circuit court and remand for proceedings consistent with this order.

¶ 3                                  I. BACKGROUND

¶ 4             On April 9, 2014, Robert Gurtler, M.D. (Gurtler), performed a total knee replacement on Diana at The Carle Foundation Hospital (Carle). On April 17, 2014, Diana was discharged from Carle. On May 1, 2014, Diana saw Gurtler for her first post operative visit, at which time Gurtler noted significant fatty necrotic drainage from her incision. Gurtler scheduled her for a procedure to clean the incision and prescribed antibiotics.

¶ 5             The next day, May 2, 2014, before Diana was scheduled for the procedure to clean her wound, Diana went to Carle's emergency room complaining of shoulder and neck pain. Valerie Pollard, D.O. (Pollard), treated Diana, prescribed medication for her pain, and discharged her. Earlier the same day, Diana saw Nihinlolawa Ijamakinwa, M.D. (Ijamakinwa), to clear her for the surgery Gurtler had set for May 5, 2014. Ijamakinwa examined Diana and cleared her for the procedure.

¶ 6             On May 4, 2014, Diana went to another hospital's emergency room in Danville, Illinois, complaining of hearing loss. The emergency physician Diana saw ordered a culture of the knee surgery wound, and determined she was likely septic. This doctor phoned Gurtler and advised Gurtler of her findings.  Gurtler told the emergency room physician he would clean out the wound first thing the next morning. The Danville facility then transferred Diana to Carle.

¶ 7             Sreenu Chakumgal, M.D. (Chakumgal), saw Diana when she arrived at Carle's emergency room on May 4, 2014, and diagnosed her with septic shock. Chakumgal sought an orthopedic consult and admitted Diana to the intensive care unit (ICU). While in the ICU, Hari Puttagunta, M.D. ordered the incision cultured and requested an infectious disease consult. Richard Pearson, M.D. (Pearson), saw Diana in the ICU for the orthopedic consult, and performed a cleaning procedure on Diana at her bedside.

¶ 8        On May 5, 2014, Stephen Dolan, M.D., (Dolan) saw Diana for the infectious disease consult, prescribed an antibiotic, and ordered blood work. Later that day, Dolan changed Diana's antibiotic to one useful against another type of infection. This day or the next, after the lab results came back from the Danville hospital, Dolan switched Diana's antibiotic to the medication Dolan first specified. Due to Diana's condition, the surgery previously set for May 5, 2014, was rescheduled for May 7, 2014.

¶ 9        Dolan testified at his discovery deposition that had Gurtler ordered a wound culture on May 1, 2014, Dolan would likely have known when he treated Diana on May 5, 2014, what organism was the source of the infection. Dolan also believed as of the morning of May 6, 2014, he would have been able to successfully treat Diana's infection and save her life.

¶ 10       On May 7, 2014, Gurtler removed Diana's infected replacement knee. Diana never regained consciousness after the surgery and remained intubated. On May 9, 2014, at 48 years old, Diana died from septic shock and methicillin-susceptible Staphylococcus aureus (MSSA) septicemia flowing from her infected replacement knee.

¶ 11       Plaintiff filed his first complaint on March 3, 2016, and subsequently filed amended complaints. These complaints each alleged medical malpractice against defendants. On July 5, 2016, and September 2, 2016, plaintiff filed affidavits pursuant to section 2-622 of the Illinois Code of Civil Procedure (735 ILCS 5/2-622 (West 2014)). The parties engaged in motion practice and conducted discovery. Their discovery included interrogatories, document production, and depositions. On August 28, 2019, plaintiff filed a motion to compel defendants to produce documents previously requested. On October 3, 2019, plaintiff noticed the motion to compel for hearing for October 29, 2019.

¶ 12          Though the defendants, other than Pearson, had not yet answered the pending amended complaint, defendants, again other than Pearson, filed a motion to set a trial date on October 10, 2019. The motion was scheduled for hearing on November 13, 2019, but the record does not evidence the circuit court conducted a hearing on the motion. On November 18, 2019, the court entered a Rule 218 scheduling order. The Rule 218 order *inter alia* directed plaintiff to answer the Rule 213(f) expert witness interrogatories on or before February 10, 2020. The order also directed the parties to complete discovery by February 1, 2021, and set the matter for trial for April 5, 2021.

¶ 13          Between entry of the scheduling order and the deadline for plaintiff to disclose his expert witnesses, February 10, 2020, the parties continued conducting discovery. The record suggests defendants provided two more responses to the document requests, and the parties took one deposition.

¶ 14          Plaintiff, due to his counsel's actions, did not make his expert witness disclosures before February 10, 2020, as directed by the circuit court's scheduling order. Prior to the deadline, it appears plaintiff took no action to obtain an extension of the disclosure date. On March 13, 2020, all defendants but Pearson filed motions for summary judgment based on plaintiff's failure to provide information on his Rule 213(f) expert witnesses, given that without experts, plaintiff could not demonstrate any individual defendant's conduct breached the standard of care or show causation. On March 19, 2020, pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002), Pearson filed a motion seeking to bar plaintiff from presenting expert testimony due to plaintiff's failure to disclose Rule 213(f) expert witnesses.

¶ 15          On March 24, 2020, plaintiff filed a motion seeking to extend the deadline to disclose his expert witnesses, as well as other deadlines. Plaintiff's stated cause for the motion was

generally (1) that the parties had been diligent conducting discovery, (2) that discovery was ongoing, and (3) that defendants had discovery responses outstanding. On April 1, 2020, Pearson filed a motion for summary judgment similar to the motions the other defendants had filed.

¶ 16    On April 13, 2020, plaintiff filed a pleading responding to the summary judgment motions and providing additional support for his motion seeking to extend his disclosure deadline. Plaintiff asserted he was waiting to provide Rule 213(f) disclosures until he had completed discovery so the answers would be comprehensive. Plaintiff noted as well that this was his first request for an extension of the disclosure deadline, and the parties had not had a conference pursuant to Illinois Supreme Court Rule 201(k) (eff. May 29, 2014). Therein plaintiff described defendants' motions as brought pursuant to Rule 219. Plaintiff included proposed answers to the expert witness interrogatories and unredacted section 2-622 affidavits. Shortly thereafter, some defendants filed a reply in support of their summary judgment motions, and responses to plaintiff's request to extend his disclosure deadline. Some also filed a motion to strike plaintiff's tendered disclosures and affidavits. Pearson filed a reply to support his motion to bar and response to plaintiff's request to extend his disclosure deadline.

¶ 17    On April 30, 2020, plaintiff filed a reply to support his motion for extension of time to disclose expert witnesses. Therein plaintiff notes (1) he had not acted contumaciously, (2) he had not previously violated any order, and (3) he offered to pay a fine. Thereto plaintiff attached an affidavit providing additional reasons the court should find good cause pursuant to Rule 183 to grant an extension. The affidavit described (1) the progress of the case, (2) the further discovery he wished to do, (3) the other cases plaintiff's counsel had been attending to, and (4) that plaintiff's counsel had been ill, which was affecting his ability to move cases forward.

¶ 18          On May 4, 2020, plaintiff filed a response to Pearson's motion for summary judgment with supporting affidavits and deposition excerpts. Pearson filed a reply days later. On May 15, 2020, plaintiff sought leave to file *instanter* a surresponse to defendants' motions for summary judgment.

¶ 19          On June 17, 2020, the circuit court heard arguments on the pending motions. The court noted at the outset the issue was whether plaintiff could establish good cause for the court to exercise discretion in order to extend the disclosure deadline. Secondarily, the court stated the proper remedy was a related issue, dependent on the first. During the arguments, defendants urged application of Rule 183 and a good cause standard. Defendants sought summary judgment in their favor as the appropriate remedy. Plaintiff as well argued the application of Rule 183 and good cause.

¶ 20          At the conclusion of argument, the circuit court found plaintiff did not demonstrate good cause for an extension, and that the court therefore did not have discretion, given that finding, to permit disclosure of expert witnesses. Without those experts the court noted plaintiff could not avoid summary judgment in favor of defendants.

¶ 21          On June 18, 2020, the circuit court entered an order quoting Rule 183 and its good cause language. The court repeated the reasons placed on the record the previous day that the court could not find good cause, and summary judgment for the defendants was the proper remedy. The court denied plaintiff's motion for an extension of time and granted the defendants' motions for summary judgment. The court then entered judgment in favor of defendants and against the plaintiff.

¶ 22          Plaintiff appeals that judgment. Plaintiff contends Rule 219 governs sanctions for breaches of trial court discovery orders, and that the sanction herein, summary judgment in favor

of defendants, was unduly harsh. Defendants contend Rule 183 controls and that summary judgment was appropriate. We address these issues in turn.

¶ 23                                  II. ANALYSIS

¶ 24                           A. The Supreme Court Rules

¶ 25        Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011) provides:

> "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act *which is required by the rules* to be done within a limited period, either before or after the expiration of the time." (Emphasis added.)

¶ 26        Illinois Supreme Court Rule 219 (eff. July 1, 2002) permits a trial court to sanction a party for an unreasonable failure to comply with a supreme court rule regarding discovery or an order entered pursuant to these same rules. *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1138 (2004).

¶ 27                           B. Standard of Review

¶ 28        Defendants urge Rule 183 and its good cause standard applied to the discovery and sanction issue in the circuit court. Plaintiff argues Rule 219 governs.

¶ 29        We construe supreme court rules as we do statutes. Our review is therefore *de novo* regarding which supreme court rule and standard applies. *Vision Point of Sale, Inc., v. Haas*, 226 Ill. 2d 334, 342 (2007).

¶ 30        C.  Supreme Court Rule 219 Provides the Framework for Analysis

¶ 31        One of the authorities cited by the circuit court, and suggested by defendants as applicable, is our trailhead, though not for the reasons proposed by the court. In *Vision Point*, our supreme court held at the outset that it is Rule 183 that governs extensions of deadlines "set forth

in our rules." *Id.* at 336. Near the end of the opinion, the supreme court emphasized the dichotomy between failing to comply with a court order and a deadline established by rule:

> "We stress, however, that a party's recalcitrance in complying with an *order of the circuit court* is an issue separate and apart from the issue of whether a party has established good cause under Rule 183 to request an extension of time to comply with a *deadline found within this court's rules*." (Emphases added.) *Id.* at 353.

¶ 32    For context, the supreme court decided *Vision Point* while the jurisprudence relating to compliance with the 28-day deadline provided by Illinois Supreme Court Rule 216 (eff. Aug. 1, 1985), relating to requests for admissions of fact, was still developing. *Id.* at 341-43. Noting that Rule 216 requests are a discovery tool, the supreme court called out its view that trial courts must have discretion to address discovery issues. *Id.* at 343. This perspective is consistent as well with the "broad overall policy goal of resolving cases on the merits rather than on technicalities." *Id.* at 352. Finally, the supreme court noted Rule 219 provides for various sanctions for violations of discovery requirements imposed by supreme court rule or trial court order entered pursuant to the supreme court's rules on discovery. *Id.* at 353.

¶ 33    We too have said, as noted above, that it is Rule 219 that permits a circuit court to impose sanctions for unreasonable failures to comply with a court's discovery order. *Stringer*, 351 Ill. App. 3d at 1138-39. See also *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 119 (1998).

¶ 34    Thus, we conclude the circuit court should have considered Rule 219, and applied it to the controversy below, instead of Rule 183. The violation before the court was proffered as emanating from the court's scheduling order, not a supreme court rule. The circumstances fall squarely within the confines of an order entered by the court, pursuant to the supreme court rules

on discovery. Therefore, we will review with reference to Rule 219, as the court should have, and now turn to the propriety of the sanction.

¶ 35          D. The Circuit Court's Sanction Leading to Judgment for Defendants

Was Improper Given the Circumstances

¶ 36          We review a court's decision to impose sanctions pursuant to Rule 219 for an abuse of discretion. *Stringer*, 351 Ill. App. 3d at 1138. See also *Shimanovsky*, 181 Ill. 2d at 120.

¶ 37          As we noted in *Stringer*:

"An order to dismiss with prejudice or the imposition of a sanction that results in a default judgment should be used only in those cases where a party's actions show a deliberate, contumacious, or unwarranted disregard of the court's authority." *Stringer*, 351 Ill. App. 3d at 1139.

¶ 38          In other words, Rule 219 countenances sanctions only "where a party unreasonably fails to comply with a discovery order." *Id.* A just Rule 219 sanction is one that "insures both discovery and a trial on the merits." *Shimanovsky*, 181 Ill. 2d at 123. The purpose of such sanctions is to coerce compliance with rules and orders regarding discovery, and not to punish. *Id.* As such, "dismissal should only be employed as a last resort and after all the court's other enforcement powers have failed to advance the litigation." *Id.* These concepts are well established and have been since the early days of Rule 219. See, *e.g.*, *United Excavating & Wrecking, Inc. v. J. L. Wroan & Sons, Inc.*, 43 Ill. App. 3d 101, 105 (1976). In short, progressive sanctions short of dismissal is what the supreme court rules contemplate and require.

¶ 39          Our supreme court directs a reviewing court to consider several factors to determine the appropriate sanction, if any at all, in these matters. These are:

"(1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence." *Shimanovsky*, 181 Ill. 2d at 124.

¶ 40 In the instant case, these considerations favor plaintiff. However, when conducting such an analysis, no one factor is dispositive. *Id.*

¶ 41 Defendants can hardly claim surprise, as the trial was not set for over a year. As well, it should have been no surprise that plaintiff would utilize experts to support his claim. Some of the opinions of the experts were not unknown as those comprised a portion of the affidavits, in some detail, filed in relation to the complaints. Plaintiff had of course redacted the names of the experts from those filings, and had not disclosed the affiants as witnesses plaintiff would use. However, the disclosures blunt defendants' suggestion of surprise.

¶ 42 Likewise, we find it difficult to see how defendants would have been prejudiced by the disclosures tendered. Certainly, defendants would have had the opportunity to request extensions to respond to or address plaintiff's disclosures if they thought that necessary. Further, any delay flowing from the late disclosure would likely have prejudiced plaintiff and his family more than it would defendants.

¶ 43 As to the nature of the evidence, like surprise, the evidence at issue would have been typical for a case of this nature. This factor favors neither plaintiff nor defendants.

¶ 44 Defendants were diligent in seeking discovery herein and objected in a timely manner to plaintiff's disclosures. These considerations favor defendants.

¶ 45　　　　Good faith however favors the plaintiff. There simply is no suggestion plaintiff acted in bad faith, flaunted the circuit court's order, or was contumacious. We recognize it is still not entirely clear the reason plaintiff failed to disclose before the deadline without seeking an extension informally from defendants or formally from the court. Given plaintiff offered several reasons over the course of time, the circuit court's concern was not misplaced. Ultimately, however, this does not equate to bad faith, or a conclusion plaintiff lacked good faith.

¶ 46　　　　We conclude as the supreme court has that "a greater degree of prejudice and a stronger showing of wrongdoing is necessary than that presented by the facts of this case in order to impose such a drastic sanction." *Shimanovsky*, 181 Ill. 2d at 129. This was plaintiff's first violation of the circuit court's discovery order, and plaintiff had not previously sought an extension. There was plenty of time before trial to resolve any issues either party had with discovery. The parties had already exchanged written discovery, and, it appears, taken numerous depositions. They had engaged motion practice, and plaintiff had filed two amended complaints. It does not appear the parties or court had any prior issues of significance despite the foregoing activities. As an aside, but curious, is the apparent absence of attempts to resolve this discovery issue prior to turning to the court, as required by Illinois Supreme Court Rule 201(k) (eff. May 29, 2014).

¶ 47　　　　Therefore, the sanctions imposed by the circuit court were unreasonable. "When sufficient evidence is available to both parties which enables them to establish their case or defense, a sanction which disposes of a claim without a trial on the merits constitutes an abuse of discretion." *Shimanovsky*, 181 Ill. 2d at 128. With the discovery already completed by the time of the entry of judgment, and ample time before trial to conduct additional discovery including that related to plaintiff's expert disclosures, the parties would have been able to prosecute their claims.

The court's sanctions constituted an abuse of discretion. A reasonable sanction would be one that does not lead to dismissal, or one that does not entirely prevent plaintiff from presenting his claims of medical malpractice. *Id.* at 129.

¶ 48      Finally, we note reversal is consistent with the goal to encourage courts to resolve cases on their merits, as well as coercing compliance with discovery, the underlying reason for sanctions.

¶ 49      III. CONCLUSION

¶ 50      For the foregoing reasons, we reverse the circuit court's judgment and remand for proceedings consistent with this order.

¶ 51      Reversed and remanded.