2025 IL App (1st) 241681-U

SIXTH DIVISION
June 27, 2025

No. 1-24-1681

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| GREGORY PUCCETTI, as independent executor of the estate of KATHLEEN PUCCETTI, deceased, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | Appeal from the Circuit Court of Cook County |
| v. | ) ) ) | No. 2020 L 13594 |
| FRANCISCAN COMMUNITIES, INC., an Indiana Not-For-Profit Corporation, and FRANCISCAN SISTERS OF CHICAGO SERVICE CORPORATION, an Illinois Not-For-Profit Corporation, | ) ) ) ) ) ) | The Honorable Michael F. Otto, Judge Presiding. |
| Defendants-Appellees. | ) ) | |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the grant of summary judgment to defendants.

¶ 2                                  I. BACKGROUND

¶ 3    St. Joseph Village of Chicago (St. Joseph) is a long-term care facility owned and operated by defendants Franciscan Communities, Inc. and Franciscan Sisters of Chicago Service Corporation (together, Franciscan). On December 21, 2018, Kathleen Puccetti was admitted to St.

Joseph after she suffered a heart attack and stroke. Her intake paperwork indicated that she suffered from "unspecified osteoarthritis" and "reduced strength of upper extremities." While at St. Joseph, Kathleen required assistance with daily living activities, including walking, toileting, bathing, and transferring from her bed to a wheelchair.

¶ 4    On January 6, 2019, while Kathleen was still at St. Joseph, she called her daughter and told her that a nurse pulled and twisted her arm. She did not tell her daughter who the person was, however, just that it was someone "in charge of getting her up and moving her." The next morning, Kathleen complained of pain and said she was unable to lift her right arm. She was transported to the emergency room and an x-ray study of her arm was performed, which revealed "body demineralization without evidence of actual fracture or dislocation" and a "mildly" or "[m]inimally displaced radial head fracture" of her right arm.

¶ 5    After learning about Kathleen's fracture, Olive Mendoza, Franciscan's Director of Nursing, conducted an investigation, which included interviewing various staff members. In her report, Mendoza noted that Kathleen had "no occurrence of fall or other incident[s] during her stay" at St. Joseph and "never verbalize[d] to anyone in the community that her hand/arm [wa]s being pulled by staff." Mendoza concluded that Kathleen's "minimal displaced radial head fracture could have [been] caused by stress to the right hand due to the frequent use for bed mobility, transfer and ambulation with walker while in therapy" and that "[g]iven [Kathleen's] clinical condition and weakened bone with diagnosis of OA [osteoarthritis] and osteopenia (CT scan result from the hospital) the repeated use of the right hand/arm and all body weight going to that hand might have caused the resident's bone to break."

¶ 6     Kathleen did not return to St. Joseph after her emergency room visit. She died just over four months later, on May 12, 2019, from "cardiorespiratory failure and aspiration pneumonia/congestive heart failure."

¶ 7     Kathleen's son, plaintiff Gregory Puccetti (Puccetti), served as independent executor of her estate. On December 21, 2020, he filed a complaint against Franciscan, alleging that Franciscan's negligence caused Kathleen to suffer an arm fracture as well as a sacral pressure injury. However, he abandoned any claim related to the sacral pressure injury on appeal, so we do not discuss it here. He also brought a *res ipsa loquitur* claim against Franciscan, claiming that Kathleen's injuries would not have occurred if ordinary care had been exercised by Franciscan. He later amended his complaint to add a wrongful death claim.

¶ 8     On June 1, 2023, Franciscan filed a motion for summary judgment, arguing that Puccetti "failed to offer any evidence indicating [Franciscan's] acts, or failure to act, were the proximate cause of [Kathleen's] injuries or death." Franciscan argued that although Puccetti alleged it was negligent in allowing Kathleen to sustain an arm fracture, "[t]his fracture was unwitnessed, and it would have occurred when she had yet-to-be diagnosed low bone density." Although Kathleen made references to a "nurse" hurting her arm, she never named this person or provided any other identifying details. Therefore, Franciscan argued that summary judgment on the negligence counts was appropriate, as "no facts in evidence show this alleged person was under the control of [Franciscan] to tie up the causal connection." Franciscan also argued that because Kathleen died more than four months after her discharge from Franciscan and her causes of death were listed as "cardiorespiratory failure and aspiration pneumonia/congestive heart failure," it could not be held liable as Puccetti "failed to present any specific facts" to support a finding that the staff at Franciscan "caused or contributed to" Kathleen's death. Finally, Franciscan argued that Puccetti

could not establish *res ipsa loquitur*, because he "fail[ed] to establish the accident is of the type that does not ordinarily happen" when ordinary care is exercised. Franciscan noted that Kathleen's "right arm x-ray revealed bony demineralization" and argued that "fractures in the presence of osteopenia (low bone density) do regularly occur, despite ordinary care [being] exercised."

¶ 9    In its response, Puccetti argued that genuine issues of material fact existed regarding the cause of Kathleen's arm fracture. He pointed to Kathleen's medical records, which indicated that Kathleen was transferred by only one staff member on numerous occasions, and argued, based on his Rule 213 general disclosures, that anticipated testimony from his nursing expert, Charlotte Sheppard, would create a genuine issue of material fact as to whether Franciscan's nursing staff's failure to perform proper transfers caused Kathleen's arm fracture. He also argued, based on the anticipated testimony of Dr. Hollingsworth, an orthopedic surgeon, that "even if Kathleen had osteopenia and/or osteoarthritis, the condition(s) would not have caused Kathleen's injury unless she experienced a fall or some other traumatic event or force."

¶ 10    In its reply, Franciscan argued that Puccetti failed to offer any evidence of negligence and instead relied solely on speculation to support his theory that Franciscan caused Kathleen's right arm fracture. Franciscan also argued that the proposed testimony of Puccetti's controlled experts, nurse Sheppard and Dr. Hollingsworth, could not be considered as "neither [expert] ha[d] sworn to their disclosed opinions under penalties of perjury," and that "[a]ny attempt to create triable questions of fact arising out of the unverified, disclosed opinions of controlled expert witnesses who have not yet testified at deposition or submitted an affidavit is improper at the summary judgment stage."

¶ 11    Dr. Hollingsworth was deposed on April 11, 2024. At the hearing on Franciscan's motion for summary judgment, which took place on April 19, 2024, Franciscan argued that Puccetti failed

to establish a genuine issue of material fact on breach of duty and causation because there was no evidence that anyone from Franciscan caused Kathleen's radial fracture. Franciscan also argued that Puccetti could not rely on unsubstantiated disclosures from Dr. Hollingsworth or nurse Sheppard for support, and pointed out that Puccetti never submitted deposition testimony or affidavits from either Dr. Hollingsworth or nurse Sheppard before the hearing or asked the court to stay the summary judgment proceedings. Puccetti admitted that did he not submit a transcript of Dr. Hollingsworth's testimony or an affidavit from him even though he was deposed the week prior, but argued that "even without [these] expert opinions, a jury could reasonably conclude that negligence occurred or at least some sort of incident occurred."

¶ 12     On April 24, 2024, five days after argument, the court granted Franciscan's motion for summary judgment. It found Puccetti's Rule 213 disclosures were not competent evidence for purposes of a summary judgment motion, because they were drafted by attorneys and merely contained anticipated testimony from Puccetti's experts. The court reasoned that "without the expert disclosures on which [Puccetti] relies, [Puccetti] has no evidence that [Franciscan] committed any negligent act which may have proximately caused either of [Kathleen's] injuries, or that such injuries proximately caused [Kathleen's] later death." The court also found that because Puccetti "presented no evidence apart from expert disclosures (that cannot be considered at this stage)" to show that this was the sort of injury that does not normally happen in the absence of negligence, Franciscan was entitled to summary judgment on the *res ipsa loquitur* count.

¶ 13     On May 24, 2024, Puccetti filed a motion to reconsider. He claimed that Dr. Hollingsworth's deposition testimony – which he attached as an exhibit to his motion – was "newly discovered evidence" that "clearly establish[ed]" that Kathleen's injuries "would not have occurred in the absence of negligence." In his deposition, Dr. Hollingsworth opined that the "acute

fracture of the elbow occurred with inappropriate handling or inattentive nursing staff allowing [Kathleen's] elbow to be fractured" and that it was a "breach in the nursing standards that allowed for this fracture to occur." Dr. Hollingsworth also testified that he "d[id]n't believe that [Kathleen] could have caused this [injury] herself." In response, Franciscan noted that Puccetti did not dispute the propriety of summary judgment in its favor as to Kathleen's alleged sacral pressure injury or as to her alleged wrongful death. In addition, it argued that Puccetti's "attempt to cite" Dr. Hollingsworth's testimony in support of its negligence and *res ipsa loquitur* claims was an improper "second bite" at the apple that "neither satisfies the grounds for reconsideration nor presents triable questions of fact." It argued that because "Illinois law does not afford parties reconsideration of final judgments based on evidence they could have – but failed – to submit to the court for consideration," Puccetti's motion to reconsider should be denied.

¶ 14    At a hearing on the motion to reconsider, the court pointed out that Dr. Hollingsworth's deposition was taken the week before the hearing on the motion for summary judgment. It noted that Puccetti could have rushed the transcript of Dr. Hollingsworth's deposition testimony or obtained an affidavit from him, but instead decided to rely solely on its Rule 213 disclosures. When the court asked Puccetti how this evidence could be considered unavailable at the time the court granted summary judgment. Puccetti responded, "I'm not suggesting that we should not have brought this to the court's attention and asked the Court to delay ruling pending the receipt of the deposition testimony. I'm not making an excuse for that. I believe that should have been done." Puccetti argued, however, that although Dr. Hollingsworth was deposed on April 11, 2024, he "did not have the ability to provide the court with Dr. Hollingsworth's testimony" at that time.

¶ 15    The court denied Puccetti's motion to reconsider, reasoning that he "did not attempt to provide a copy of [Dr. Hollingsworth's testimony] after argument but before [the court] issued a

ruling, nor did [he] provide the Court with an affidavit from the expert. [Puccetti] relied on the disclosures, which are [inadmissible] according to the case law cited in the briefs and in the Court's prior Order. **** It's not sufficient evidence to overcome." The court acknowledged that if the transcript of Dr. Hollingsworth's deposition testimony had been submitted earlier, then it "would have denied summary judgment."

¶ 16                                    II. ANALYSIS

¶ 17           A. The Trial Court Properly Granted Summary Judgment to Franciscan

¶ 18     Puccetti argues that the trial court erred when it concluded that he "failed to present evidence beyond expert disclosures to establish factual issues regarding [Franciscan's] breach of the appliable standard of care" and granted summary judgment in Franciscan's favor. Puccetti argues that his "theory about an improper transfer," coupled with the medical records Franciscan submitted in support of its motion for summary judgment, were enough to "lead a reasonable jury to conclude that [Franciscan] failed to provide the required level of assistance during [Kathleen's] transfers, thereby forcing her to exert undue force on her arm, which contributed to cause her fracture, as detailed in [Franciscan's] investigation report."

¶ 19    We review a trial court's grant of summary judgment *de novo*. *Butkiewicz v. Loyola University Medical Center,* 311 Ill. App. 3d 508, 511 (2000). A grant of summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). While a plaintiff "need not prove his case during summary judgment," he "must present some evidentiary facts to support the elements of his cause of action." *Krueger v. Oberto*, 309 Ill. App. 3d 358, 367 (1999). Summary

judgment is proper if the plaintiff cannot establish any one of the elements of the cause of action. *Williams v. Manchester,* 228 Ill. 2d 404, 417 (2008).

¶ 20    Here, Puccetti brought negligence and *res ipsa loquitur* claims against Franciscan. To prove negligence, a plaintiff must prove that the defendant breached a duty of care, and that this breach proximately caused the injury. *Myers v. Heritage Enterprises, Inc.,* 354 Ill. App. 3d 241, 244 (2004). For a *res ipsa loquitur* claim, the plaintiff must "prove that he was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence (the probability element) (2) by an agency or instrumentality within the defendant's exclusive control (the control element)." *Johnson v. Armstrong*, 2022 IL 127942, ¶ 35 (2022).

¶ 21    Here, Puccetti alleged that Kathleen was injured as a result of Franciscan's negligence, and that Kathleen's injury was the sort that does not normally happen in the absence of negligence. For support, he relied heavily on his Rule 213 disclosures, which included the anticipated testimony of his controlled expert, Dr. Hollingsworth. However, the trial court correctly disregarded the information contained in the 213 disclosures, as "[u]nsworn statements of opinion from a party's retained expert may not be considered for purposes of section 2–1005(c) of the Code." *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 43; *In re Estate of Case*, 2016 IL App (2d) 151147, ¶ 30 ("the contents of a Rule 213(f) disclosure are not evidence for purposes of summary judgment" because a Rule 213(f) disclosure "does not constitute a pleading, deposition, admission, or affidavit under section 2-1005(c)").

¶ 22    Puccetti argues that even without this testimony, evidence in the record was sufficient to defeat Franciscan's motion for summary judgment. He references several of Kathleen's medical records that were submitted by Franciscan in support of its motion for summary judgment – including "the OT visit note from January 4, 2019; the PT visit note from January 5, 2019; the

skilled nursing assessment from January 6, 2019; the note documenting [Kathleen's] first complaint of arm pain; and the single incident report completed in connection with the injury" – and argues that these records raised questions of fact regarding the cause of Kathleen's right arm fracture. He reasons that because Kathleen's medical records "indicate Kathleen required two-staff assistance for bed and mobility transfers" and reflect that Kathleen was "transferred by one staff member on numerous occasions," this is enough to defeat summary judgment. Puccetti's brief on appeal does not have any citations to the record to support this argument.

¶ 23 When reviewing a trial court's decision on a summary judgment motion, we consider all evidence that was properly submitted. *Nationwide Advantage Mortgage Co v. Ortiz*, 2012 IL App (1st) 112755, ¶ 17. However, Illinois Supreme Court Rule 341(h)(7) requires parties to support their arguments by referencing "the pages of the record on appeal where evidence may be found." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Puccetti's failure to cite to the record here required this court to scour Kathleen's 500-plus pages of medical records for evidence to support his argument. This violation of Rule 341 provides grounds for this court to reject his argument entirely. See *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 12 ("The failure to provide proper citations to the record is a violation of Rule 341(h)(7), the consequence of which is the forfeiture of the argument."). Although we decline to do so here, we find no evidence in the record sufficient to defeat Franciscan's motion for summary judgment. While some of Kathleen's medical records indicate that "maximum assistance" and two-person support was required for certain activities such as transfers and toileting, the records also indicate that one-person support was all that was required for others, including bathing, hygiene, dressing and bed mobility. And while certain records indicate that transfers were meant to be completed by two people, others stated that that they could be conducted "with the assistance of 2 people/lift devices *as required*," implying

that two-person transfers were not always mandatory. (Emphasis added.) In addition, Gloria Leiva, the occupational therapist in charge of Kathleen's care, was asked in her deposition if "maximum assistance" requires two staff members to help a patient. She responded that it was a "judgment call" by the therapist or nurse based on an assessment of the patient that is done at that time, that "depend[s] on [the] patient" and "[d]epends on the day." Thus, the medical records are not sufficient to create a genuine issue of material fact about whether Franciscan breached the standard of care when performing transfers.

¶ 24    Even if these records provided evidence to demonstrate a breach of the standard of care, Puccetti still fails to identify any evidence the record to support the causation element of his negligence claim. See *Majetich v. P.T. Ferro Construction Co.,* 389 Ill. App. 3d 220, 224 (2009) (internal citations omitted) ("The existence of proximate cause cannot be established by speculation, surmise, or conjecture. Absent affirmative and positive evidence that defendant proximately caused plaintiff's injuries, a plaintiff fails to establish the existence of a genuine issue of material fact.") Other than Dr. Hollingsworth's testimony, which was submitted after summary judgment was already granted to Franciscan, Puccetti points to nothing in the record to support a finding that Kathleen's arm fracture was the sort of injury that does not normally occur in the absence of negligence. Therefore, the trial court properly granted summary judgment to Franciscan.

¶ 25          B. The Trial Court Properly Denied Puccetti's Motion to Reconsider

¶ 26    Puccetti argues the trial court erred when it denied his motion to reconsider. We review a trial court's decision to deny a motion to reconsider for an abuse of discretion. *Stringer v. Packaging Corporation of America*, 351 Ill. App. 3d 1135, 1140 (2004). We will reverse only if

10

the trial court's ruling was arbitrary or unreasonable, or where no reasonable person would agree with the court's position. *People v. Wells,* 2024 IL App (1st) 232453, ¶ 16.

¶ 27 "The purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law." *Stringer*, 351 Ill. App. 3d at 1140. "When a party seeks to have a motion to reconsider granted on grounds of newly discovered evidence, the movant must provide a reasonable explanation for why the evidence was not available at the time of the original hearing." *Id*. at 1141; *Woolums v. Huss*, 323 Ill App. 3d 628, 640 (2001) ("Submission of new matter on a motion to reconsider summary judgment lies in the discretion of the trial court and should not be allowed absent a reasonable explanation of why it was not available at the time of the original hearing.")

¶ 28 Here, Puccetti argues that although Dr. Hollingsworth was deposed more than a week before the hearing on Franciscan's motion for summary judgment, he "did not have the ability to provide the court with Dr. Hollingsworth's testimony." But Franciscan argued at the hearing that summary judgment was proper because Puccetti failed to present the "minimal level of essential evidence" necessary to support his negligence and *res ipsa loquitur* claims, and that Puccetti could not rely on Dr. Hollingsworth's "unverified disclosed opinions" to create a question of fact. Yet Puccetti did not explain why he could not have rushed a transcript of Dr. Hollingsworth's testimony, provided an affidavit from him, asked the court for an extension of time, or submitted anything in the five days after the hearing, before the court ruled on the motion for summary judgment. Puccetti admitted that he probably should have done so at the hearing on his motion to reconsider, telling the court he "believe[d] that should have been done." Therefore, this case is analogous to those where this court has affirmed a trial court's decision to deny plaintiff's motion

to reconsider. See, *e.g., Gardner v. Navistar Int'l Transportation Corp.,* 213 Ill. App. 3d 242, 248 (1991) (affirming the trial court's decision to disregard an affidavit submitted for the first time with a motion to reconsider, noting that the affidavit's contents were available before the summary judgment hearing, yet the plaintiff provided no explanation—reasonable or otherwise—why the material was not presented earlier, and reasoning that trial courts "should not permit litigants to remain silent, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling"); *Freeman v. Augustine's Inc.,* 46 Ill. App. 3d 230, 236 (1977) (refusing to accept depositions and transcripts attached to a motion to reconsider when the plaintiff "had ample opportunity to present evidence prior to the entry of summary judgment" and yet failed to do so); *Vantage Hospitality Group, Inc. v. Q III Development, LLC,* 2016 IL App (4th) 160271, ¶ 57 (stating that "a party filing or opposing a dispositive motion *** should always be required to muster everything the party has at the hearing on that motion" because "[t]he other party and the court are entitled to no less"); *Woolums*, 323 Ill App. 3d at 640-41 (finding that the trial court did not abuse its discretion when it denied plaintiffs' motion to reconsider when there was "no indication from plaintiffs why they could not have produced the detailed affidavits of [their experts] earlier", reasoning that "[t]he purpose of a motion to reconsider is not to reiterate arguments already made, nor to add new evidence that could have been produced earlier").

¶ 29    "When a movant seeks reconsideration based on newly discovered evidence, 'a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable.' ". *Simmons v. Reichardt,* 406 Ill. App. 3d 317, 324 (2010) (quoting *Stringer*, 351 Ill. App. 3d at 1141). Because Puccetti failed to meet this burden here, we find that the trial court properly exercised its discretion to deny his motion to reconsider.

¶ 30                                   III. CONCLUSION

¶ 31    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 32    Affirmed.